[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 608.]

SMITH ET AL., APPELLANTS, *v*. GRANVILLE TOWNSHIP BOARD OF TRUSTEES, APPELLEE.

[Cite as *Smith v. Granville Twp. Bd. of Trustees*, 1998-Ohio-340.]

*Municipal corporations—Annexation of territory—In considering annexation petition filed under R.C. 709.033, board of county commissioners must grant the annexation, when—Board of county commissioners shall not consider impact of schools in deciding whether the annexation is for the "general good of the territory."*

1. In considering an annexation petition filed under R.C. 709.033, the board of county commissioners must grant the annexation if it is determined that the annexation will be for the "general good of the territory sought to be annexed." (*Lariccia v. Mahoning Cty. Bd. of Commrs.* [1974], 38 Ohio St.2d 99, 67 O.O.2d 97, 310 N.E.2d 257, followed.)

2. In considering an annexation petition, the board of county commissioners shall not consider the impact of schools in deciding whether the annexation is for the "general good of the territory" because the State Board of Education, under R.C. 3311.06, has the exclusive authority over school-related issues that arise due to an annexation.

(No. 96-2350—Submitted October 22, 1997 at the Muskingum County Session—Decided May 13, 1998.)

APPEAL from the Court of Appeals for Licking County, No. 96-CA-98.

_____

{¶ 1} Appellant Gebhard W. Keny ("Keny") owns 281.052 acres of undeveloped, vacant property in Granville Township, Licking County. The property is roughly between and adjacent to the village of Granville and the city of Newark. Keny seeks to have the property annexed to the city of Newark because

Newark's zoning ordinances allow for greater density of housing per acre than does the Granville Township Code.

{¶ 2} On October 31, 1994, Keny, through his agent, appellant Harrison W. Smith, Jr. ("Smith"), filed a petition to annex Keny's property to Newark pursuant to R.C. 709.02 ("landowner's petition").[1] The Licking County Board of Commissioners ("commissioners") set the annexation petition for hearing on January 9, 1995.

{¶ 3} On November 2, 1994, the village of Granville ("village") filed a petition pursuant to R.C. 709.13 with the commissioners requesting annexation of all the township property, including Keny's property, to the village ("municipal petition"). The commissioners set an annexation hearing for January 17, 1995.

{¶ 4} On November 7, 1994, certain electors from the village and the adjacent township filed a petition seeking the election of a merger commission to consider the merger of the village and the township property pursuant to R.C. 709.45 ("merger petition").[2]

{¶ 5} On December 13, 1994, the village filed a motion for a permanent injunction seeking to enjoin the commissioners from considering the annexation petitions filed by Keny and the village. On December 30, 1994, the court of common pleas issued a preliminary injunction that barred the commissioners from hearing Keny's annexation petition. On March 3, 1995, the court of common pleas issued a permanent injunction that prevented any further consideration of Keny's

---

1. The petition for annexation of Keny's property was filed by Keny's agent, Harrison W. Smith, Jr. Smith also handled Keny's case through its appeal to this court. Both Keny and Smith are technically listed as the appellants in this case. However, for purposes of simplicity, we will refer only to Keny, the owner of the property, when referring to appellants.

2. The process for accomplishing a merger of two municipal corporations requires the following steps: (1) the legislative authority of each municipal corporation passes an ordinance appointing three commissioners to represent the respective municipal corporation in the proceedings (R.C. 709.23 to 709.27), (2) the commissioners appointed by the respective municipalities shall agree on conditions of annexation to be proposed to the voters (R.C. 709.28), and (3) the annexation is passed by a vote of the respective residents (R.C. 709.29).

annexation and the village's municipal petition until a vote on the merger petition had occurred. Keny appealed the trial court's injunction.

{¶ 6} On August 16, 1995, Keny filed a complaint for a writ of mandamus with this court seeking to dissolve the injunction. On November 22, 1995, this court, in *State ex rel. Smith v. Frost* (1995), 74 Ohio St.3d 107, 656 N.E.2d 673, issued a peremptory writ that dissolved the injunction and ordered the commissioners to proceed on the annexation petitions filed by Keny and the village.

{¶ 7} The commissioners then reset the hearing on the annexation of Keny's property for January 22, 1996. By a resolution dated February 1, 1996, the commissioners denied Keny's petition for annexation. The commissioners reasoned that:

"1. Area will not be best served with the high density of homes as presented. It was stated that 400 residential homes and an unknown number of multi-family units would be constructed.

"2. Ingress and egress issues were not clearly stated.

"3. River Road and ancillary roads are not adequate to serve the increased vehicle needs.

"4. Surface water control was not adequately discussed.

"5. Petitioner gerrymandered around the Freeman and Harris properties and the corporation line did not include all of the River Road right-[of]-way."

{¶ 8} Keny appealed the commissioners' decision to the Court of Common Pleas of Licking County. The court of common pleas, on June 2, 1996, affirmed the commissioners' denial of the annexation. Specifically, the court of common pleas found that the commissioners' denial of the annexation was "not unconstitutional, not illegal, not arbitrary, unreasonable, or capricious and that the decision is supported by substantial, reliable and probative evidence." The court of common pleas reasoned:

"The Board of Commissioners had before it evidence to consider regarding the availability of water and sewer services, police and fire protection, jurisdiction splits on roadways which could be caused if the annexation was granted, and that the city of Newark has an income tax and that Granville Township does not have an income tax as well as other relevant evidence."

{¶ 9} Keny appealed the common pleas court's decision to the court of appeals. The court of appeals, on October 8, 1996, determined that the commissioners and the court of common pleas applied the wrong test in deciding Keny's annexation petition. The appellate court indicated that the proper test is not which jurisdiction can provide the best service, but "what is for the good of the territory" to be annexed. After applying the "good of the territory" test, the appellate court concluded that the evidence indicated that the annexation of the Keny property to Newark *would* be for the good of the territory.

{¶ 10} However, the court of appeals' analysis did not stop there. The appellate court considered evidence that indicated that annexation of Keny's property would cause overcrowding of the village of Granville schools. Based solely upon this proposition, the appellate court determined that it would not be for the good of Keny's property to be annexed to Newark.

{¶ 11} On June 17, 1996, the Licking County Commissioners denied the village's petition to annex Keny's property. That denial is not before this court.

{¶ 12} On October 28, 1996, Keny moved this court to impound ballots of the November 5, 1996 election pertaining to the vote on the Conditions of Merger by the village and Granville Township, pending the decision of this court whether to accept jurisdiction of the denial of the annexation of Keny's property to Newark. On November 4, 1996, pursuant to the issuance of an alternative writ, this court ordered said ballots impounded and not counted. This court accepted jurisdiction on January 15, 1997.

{¶ 13} This cause is now before this court upon the allowance of a discretionary appeal.

—————————

*Vorys, Sater, Seymour & Pease*, *Duke W. Thomas* and *Bruce L. Ingram,* for appellants.

*Smith & Hale* and *Harrison W. Smith, Jr., pro se.*

*Moots, Cope & Stanton, Wanda L. Carter* and *Elizabeth M. Stanton,* for appellee.

*James W. Hostetler*, urging reversal for *amicus curiae*, city of Newark, Ohio.

*Patricia S. Eshman*, urging reversal for *amicus curiae,* Ohio Home Builders Association.

*Edward M. Yosses*, Director of Law, urging reversal for *amicus curiae*, city of Toledo.

*Malcolm C. Douglas* and *John E. Gotherman*, urging reversal for *amici curiae,* Ohio Municipal League and Ohio Municipal Attorneys Association.

*Janet E. Jackson*, City Attorney, and *Daniel W. Drake*, Assistant City Attorney, urging reversal for *amicus curiae*, city of Columbus.

*Means, Bichimer, Burkholder & Baker Co., L.P.A*., and *Kimball H. Carey*, urging affirmance for *amici curiae*, Buckeye Association of School Administrators and Ohio School Boards Association.

*Jones, Day, Reavis & Pogue* and *James Richard King,* urging affirmance for *amicus curiae*, Granville Village Exempted School District.

*Michael H. Cochran*, urging affirmance for *amicus curiae*, Ohio Township Association.

—————————

**LUNDBERG STRATTON, J.**

A. STANDARD OF REVIEW

**{¶ 14}** This case first requires us to examine the scope of an appellate court's review of an administrative order. The order affirming or denying a petition to annex a property may be appealed pursuant to R.C. 2506.01. See *In re Annexation of 118.7 Acres in Miami Twp.* (1990), 52 Ohio St.3d 124, 556 N.E.2d 1140. The scope of review by a court of such an administrative order is statutorily defined in R.C. 2506.04, which states:

"The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party *on questions of law* as provided by the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code." (Emphasis supplied.)

**{¶ 15}** An administrative order is initially appealed to the court of common pleas. In *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 206-207, 12 O.O.3d 198, 201-202, 389 N.E.2d 1113, 1116-1117, this court discussed the standard of review which the *common pleas court* should employ in reviewing an agency's order, stating that the common pleas court must weigh the evidence in the record and may consider new or additional evidence.

**{¶ 16}** The court of common pleas' decision may then be appealed to an appellate court "*on questions of law* as provided in the Rules of Appellate Procedure." (Emphasis supplied.) Under R.C. 2506.04, however, the scope of the appellate review is much more limited (see *Irvine v. Unemployment Comp. Bd. of*

6

*Review* [1985], 19 Ohio St. 3d 15, 18, 19 OBR 12, 15, 482 N.E.2d 587, 590) and was defined in *Kisil v. Sandusky* (1984), 12 Ohio St. 3d 30, 34, 12 OBR 26, 30, 465 N.E.2d 848, 852, as follows:

"An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires the court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence."

{¶ 17} We must therefore review the court of appeals' decision to determine whether the appellate court applied the appropriate standard of review.

B. "GENERAL GOOD OF THE TERRITORY" TEST

{¶ 18} Turning to the issues in this case, we note the long-standing principle that annexation is to be encouraged. In *Lariccia v. Mahoning Cty. Bd. of Commrs.* (1974), 38 Ohio St.2d 99, 101-102, 67 O.O.2d 97, 99, 310 N.E.2d 257, 258-259, we held:

"[T]he enactment in 1967 of R.C. 709.033 substantially curtailed the discretion to be exercised by the boards of county commissioners in such proceedings. That statute establishes specific standards to be applied by the board to the evidence before it in annexation proceedings, and grants to the board the discretion to make only those factual determinations specifically called for in the statute.

"* * *

"* * * That statute directs that the ultimate focus of annexation proceedings be on 'the general good of the territory sought to be annexed,' and *requires granting of the petition when it is shown that such benefit will result.*" (Emphasis supplied.)

{¶ 19} Therefore, in considering an annexation petition filed under R.C. 709.033, the board of county commissioners must grant the annexation if it is determined that the annexation will be for the "general good of the territory sought to be annexed." (*Lariccia v. Mahoning Cty. Bd. of Commrs.,* followed.)

**{¶ 20}** We reaffirmed that principle in *Middletown v. McGee* (1988), 39 Ohio St.3d 284, 285, 530 N.E.2d 902, 903, stating:

"As revealed by the statutes enacted by the General Assembly that are currently in force, it is the policy of the state of Ohio to encourage annexation by municipalities of adjacent territory."

**{¶ 21}** We also note that the choice of the property owner in annexing is a key consideration. In *Middletown*, we held:

"In enacting the statutes governing annexation, one of the intentions of the legislature was 'to give an owner of property freedom of choice as to the governmental subdivision in which he desires his property to be located.' " (Citations omitted.) *Id.* at 286, 530 N.E.2d at 904. See, also, *In re Annexation of 118.7 Acres in Miami Twp.*, 52 Ohio St.3d at 127, 556 N.E.2d at 1143.

**{¶ 22}** Thus, it is apparent that the spirit and purpose of the annexation laws of Ohio are to encourage annexation to municipalities and to give weight to the requests of property owners relative to the governmental subdivision in which they desire their property to be located. Therefore, the court of appeals was correct in giving deference to the desires of Keny, the sole property owner, on his petition to annex.

**{¶ 23}** The court of appeals also determined that tax issues were not eligible criteria for determining the "general good of the territory" test, citing its own decision in *In re Petition for Annexation of 165.65 Acres from Falls Twp. to Zanesville* (Jan. 10, 1996), Muskingum App. No. CT-94-32, unreported, 1996 WL 74664 (We declined to allow a discretionary appeal in 76 Ohio St.3d 1409, 666 N.E.2d 569.).

**{¶ 24}** The Fifth District Court of Appeals in *165.65 Acres* had stated:

"However, the fact that some inhabitants will now have to pay a city income tax is an unavoidable consequence of the state policy that encourages annexation

of land into municipalities and thus it is not properly to be considered when deciding whether the annexation will be for the general good of the territory."

**{¶ 25}** Therefore, the appellate court was correct in finding that the court of common pleas erred as a matter of law in considering income tax as a factor with regard to the proposed annexation of Keny's property.

**{¶ 26}** The appellate court also concluded that the commissioners and the common pleas court's decision implicitly determined that the village could provide the "best" services to the Keny property when it stated that "the Board of County Commissioners may also consider matters that affect the welfare of the territory when deciding *what is best* for the general good of the territory in question." (Emphasis supplied.)  The appellate court determined that the common pleas court failed to apply the proper law to the facts.  Specifically, the appellate court determined that the proper test to be applied in annexation petitions filed under R.C. 709.033 is what is for the "good of the territory," not what is "best for the territory."

**{¶ 27}** The basis for the appellate court's analysis of both the tax issue and the "good of the territory" test  involved a determination of the proper application of law to the facts, and therefore both issues were within the province of the appellate court's powers of review. *Kisil*.  Applying the "good of the territory" test, the appellate court initially found that there was no basis for preventing the annexation of Keny's property to Newark.  The appellate court properly concluded:

"Therefore, unless it is shown that the city of Newark is unable to provide the necessary services that a city must provide, the commissioners may not use services as a justification to deny annexation.  When considering a one hundred percent annexation or sole property owner annexation, such as presented in the case *sub judice*, it is even more important not to do a comparison of services to determine what is for the good of the territory.  Thus, considering the above guidelines, as set forth by the Ohio Supreme Court, and the fact that this is a one hundred percent

annexation petition, it is difficult to find any evidence that the annexation would not be for the good of the territory to be annexed."

{¶ 28} Thus, this portion of the court of appeals' decision determined that pursuant to Keny's wishes (to annex his property) and a lack of evidence that Newark could not provide adequate services to Keny's property, the annexation would be for the good of Keny's property and, therefore, his petition for annexation must be granted. In essence, in this portion of its decision, the court of appeals, in applying the "general good of the territory" test, determined that granting Keny's annexation petition is supported by a "preponderance of substantial, reliable, and probative evidence on the whole record." We agree and affirm this portion of the court of appeals' decision.

## C. SCHOOLS NOT A FACTOR TO BE CONSIDERED IN ANNEXATION PROCEEDINGS

{¶ 29} However, the appellate court's analysis did not end there. The court of appeals went further and considered that annexation of the Keny property could allegedly result in overcrowding of the Granville School District. Applying the "general good of the territory" test and based solely on the school overcrowding evidence, the appellate court determined that Keny's annexation petition should be denied. We disagree.

{¶ 30} The appellate court was correct in determining that there is no case law that addresses this issue directly on point. However, consideration and resolution of issues that might require a transfer of school district properties to an adjacent district to balance an inequity that arises due to annexation of property under R.C. 709.02 to 709.34 are reserved solely for the State Board of Education.[3]

---

3. R.C. 3311.06(C) states:

"(1) When all the territory of a school district is annexed to a city or village, such a territory thereby becomes part of the city school district or the school district of which the village is a part, and the legal title to school property in such a territory for school purposes shall be vested in the board of education of the city school district or the school district of which the village is a part.

Under such conditions, R.C. 3311.06 provides a mechanism whereby a school district may petition to transfer territory between districts. See, *e.g., Fairborn City School Dist. v. State Bd. of Edn.* (Oct. 24, 1996), Franklin App. No. 96APE04-416, unreported, 1996 WL 613752.

{¶ 31} Under R.C. 3311.06(C)(1), if the annexed territory comprises an entire school district, then the school district in the annexed territory automatically becomes part of the annexing territory's school district.[4] The language of R.C. 3311.06(C)(1) indicates that assimilation of the annexed territory's school district into the acquiring territory is mandatory.

{¶ 32} However, as here, where the annexed territory includes only a part of a school district, the State Board of Education, in the event the involved school districts cannot agree on a solution, is the only entity that can approve incorporation of the school district in the annexed territory into the annexing territory's school district. R.C. 3311.06(C)(2).

{¶ 33} Finally, the act of the State Board of Education disapproving a transfer of territory request pursuant to R.C. 3311.06 is a quasi-judicial act, and, as such, is appealable under R.C. 119.12. *Union Title Co. v. State Bd. of Edn.* (1990), 51 Ohio St.3d 189, 555 N.E.2d 931.

{¶ 34} Therefore, in considering an annexation petition, the board of county commissioners shall not consider the impact of schools in deciding whether the annexation is for the "general good of the territory" because the State Board of Education, under R.C. 3311.06, has the exclusive authority over school-related

---

"(2) When the territory so annexed to a city or village comprises part but not all of the territory of a school district, the said territory becomes part of the city school district or the school district of which the village is a part only upon approval by the state board of education, unless the district in which the territory is located is a party to an annexation agreement with the city school district."

4. For purposes of this opinion and solely to clarify our discussion, annexed territory means the property which is the subject of the annexation petition, and annexing territory means the property into which the annexed territory will be incorporated.

issues that arise due to an annexation. Accordingly, school issues, such as overcrowding, which arise due to annexation of property, cannot be considered as a factor in determining whether an annexation petition should be granted because such authority is reserved for the State Board of Education.

**{¶ 35}** Therefore, the court of appeals erred in considering potential school overcrowding as a factor to be considered in determining whether an annexation petition should be granted.

## D. IMPOUNDED VOTES

**{¶ 36}** We must also address the vote on the Conditions of Merger ("merger petition") that we ordered impounded on November 4, 1996.

**{¶ 37}** The petition to annex Keny's property to Newark was filed October 31, 1994. The merger petition was filed November 7, 1994. There is no law that clearly indicates which of these petitions should prevail when a landowner's petition is filed *prior* to a merger petition. However, R.C. 709.48 precludes filing an annexation petition "*on and after* the date on which a [merger] petition is filed" until the merger petition is resolved. (Emphasis supplied.) Because R.C. 709.48 is specific in its application only to *subsequent* filings, R.C. 709.48 is not applicable herein because the annexation petition was filed *before* the merger petition was filed. Therefore, the first-in-time rule shall prevail.

**{¶ 38}** Because Keny's petition was filed first in time, Keny had the right to have a ruling on his annexation petition issued before the merger petition could proceed forward.[5] Since we have resolved the annexation petition in Keny's favor, the merger petition becomes moot, and the votes shall remain impounded and sealed.

## E. CONCLUSION

---

5. Our dissolving of the permanent injunction issued by the common pleas court, which had stayed the Keny and village of Granville petitions, recognized Keny's right to proceed forward with his petition before the vote on the merger could occur.

{¶ 39} Therefore, we reverse the judgment of the court of appeals. Accordingly, Keny's petition to annex his property to Newark shall be granted.

*Judgment reversed.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

PFEIFER, J., concurs separately.

DOUGLAS, J., concurs in judgment only.

MOYER, C.J., and COOK, J., concur in part and dissent in part.

—————————————

**PFEIFER, J., concurring.**

{¶ 40} I recognize that putting high-density housing into a fairly small school district presents potentially enormous challenges regarding the sufficiency of facilities to accommodate the rapid growth. The General Assembly has also been mindful of the problems annexation may pose to particular school districts, and R.C. 3311.06 is an avenue of relief. R.C. 3311.06 provides a mechanism for the transfer of the annexed territory into the school district of the city to which the territory has been annexed.

{¶ 41} The effects of annexation on school districts have been taken into account and have been dealt with responsibly by the General Assembly. Therefore, I decline to introduce a new factor into the evaluation of annexation petitions.

—————————————

**DOUGLAS, J., concurring in judgment only.**

{¶ 42} The only question in this case is whether a board of county commissioners may consider, as a factor, the impact on schools when evaluating annexation petitions. Because the answer to this question is clearly in the negative, we should just answer "no," cite *Lariccia v. Mahoning Cty. Bd. of Commrs.* (1974), 38 Ohio St.2d 99, 67 O.O.2d 97, 310 N.E.2d 257, and *Middletown v. McGee* (1988), 39 Ohio St.3d 284, 530 N.E.2d 902, and refrain from discussing issues not raised

13

by the parties (R.C. 3311.06) and from criticizing the court of appeals when such criticism is confusing, unnecessary, and unwarranted.

**{¶ 43}** The law is clear. It has consistently been the policy of the General Assembly and, consequently, this court, that annexation is to be encouraged. In this regard, the General Assembly did not intend to vest authority in a board of county commissioners to consider the impact on schools in annexation proceedings. Had that been the intent of the legislature, it could have easily and expressly said so.

**{¶ 44}** With regard to the dissent, I have two comments.

I

**{¶ 45}** The dissent says that "[n]othing in the annexation statute or case law prohibits the board from considering school issues when determining what is for the general good of the territory." In addition, the dissent says that "[a]ny school-related issues raised at an annexation hearing that do not involve the transfer of school districts may and should be considered by the board of commissioners in determining what is for the general good of the territory."

**{¶ 46}** To accept these propositions would require ignoring a long line of public policy pronouncements from the General Assembly as well as disregarding substantial case law through which this court has mandated and enforced those pronouncements. Further, if the position on the school issue advocated by the dissent were accepted, such a decision would have a serious and dramatic detrimental effect on annexations of land in this state. In fact, for all practical purposes, annexations would be at an end. There will always be a voice or two, or more, who will say, "Not in my backyard."

II

**{¶ 47}** The dissent also says:

"Educational services are of great importance to Ohio residents. They impact not only the children who attend the schools, but, through the children's

interaction with families, neighbors, and businesses, educational services also affect the surrounding community at every level.  The relative quality of school services can have a much greater long-term effect on a territory and its residents than do other public services.  Educational services affect property values, crime rates, employment rates, and many other socio-economic factors that may benefit or harm the territory seeking to be annexed."

{¶ 48} The dissent has it exactly right.  In fact, that is what *DeRolph v. State* (1997), 78 Ohio St.3d 193, 677 N.E.2d 733, was all about.

Conclusion

{¶ 49} Because the majority says more than is necessary, thereby blurring the critical issue presented by this case, I concur in judgment only.

———————————

**MOYER, C.J., concurring in part and dissenting in part.**

{¶ 50} I concur with the majority's holding that the first-in-time rule should apply to the consideration of the annexation and merger requests.  I also concur in the first paragraph of the syllabus insofar as it reiterates the language of R.C. 709.033.  I believe, however, that the majority has misapplied the applicable standards in this case and has erred in prohibiting consideration of school-related issues and taxation issues that will have an effect on the territory seeking to be annexed ("the territory") if the annexation petition is granted.  Therefore, I respectfully dissent from the decision and analysis.

I

The "General Good of the Territory" Test Presupposes Some Benefit to the Territory from Annexation.

{¶ 51} R.C. 709.033 provides the only statutory requirements for considering a petition to annex property.  The board of county commissioners is required to grant the annexation petition if a series of requirements are met.  All parties agree that the only requirement at issue in this case is R.C. 709.033(E),

15

which provides that the petition shall be granted if "the general good of the territory sought to be annexed will be served if the annexation petition is granted."

{¶ 52} A determination that annexation will serve the general good of the territory logically presupposes that annexation will at least to some degree provide a benefit to the territory over and above the status quo. It is, therefore, necessary to inquire into what benefits and detriments the territory experiences in its current state and compare those with the benefits and detriments the territory would experience upon annexation. If the annexation does not provide some benefit to the territory, beyond its current status, there is no requirement that the board grant the annexation petition. See *Lariccia v. Mahoning Cty. Bd. of Commrs*. (1974), 38 Ohio St.2d 99, 67 O.O.2d 97, 310 N.E.2d 257.

{¶ 53} In reviewing the action of the board of county commissioners, the court of common pleas consistently and correctly stated that the board was required to determine whether the proposed annexation would serve the general good of the territory sought to be annexed. Both its analysis and conclusion cite this precise language, and its application of the law demonstrates an adherence to this test. The majority appears to have accepted the court of appeals' assertion that the court of common pleas misconstrued the standard for granting a petition for annexation. This assertion stems from a single loosely worded sentence in the court of common pleas' decision. Following its discussion of the statute and applicable test, and prior to its conclusion that correctly set forth the test, the common pleas court stated that the "Board of County Commissioners may also consider matters that affect the welfare of the territory when deciding what is best for the general good of the territory in question." This single use of the word "best" in the midst of a three-page opinion does not support a holding that the court of common pleas applied the wrong test in determining whether the board's decision was legally sound.

{¶ 54} The majority takes this assertion even a step beyond the court of appeals' decision, holding that this single word indicates that the common pleas

16

court "implicitly determined that the village could provide the 'best' services to the Keny property." Nowhere in the court of appeals' opinion, the court of common pleas' opinion, the board of commissioners' decision, or the transcript of the hearing is there any support for such a statement. Never were the potential benefits of belonging to the village of Granville discussed or compared.

{¶ 55} The court of common pleas in this case did make a comparison. It compared the services available through annexation with the services already available or in place in the township. This comparison is a necessary step in determining whether annexation would provide any benefit to the property. Never was there a comparison with the benefits that would be available in the village of Granville. Thus, the court of common pleas did apply the correct test under R.C. 709.033.

II

Factors Which may be Considered in Determining Whether the "General Good of the Territory" will be Served by Annexation.

{¶ 56} R.C. 709.033 provides the only statutory requirements for considering a petition to annex. The statute provides no guidance as to what specific factors can or should be considered in determining whether or not the annexation would serve the general good of the territory seeking annexation.

{¶ 57} The majority correctly notes that " 'the enactment in 1967 of R.C. 709.033 substantially curtailed the discretion to be exercised by boards of county commissioners in [annexation] proceedings. That statute establishes specific standards to be applied by the board to the evidence before it in annexation proceedings, *and grants to the board the discretion to make only those factual determinations specifically called for in the statute*.' " (Emphasis added.) (Citing *Lariccia v. Mahoning Cty. Bd. of Commrs*., 38 Ohio St.2d at 101-102, 67 O.O.2d at 99, 310 N.E.2d at 258-259.)

**{¶ 58}** Although the General Assembly limited a board of commissioners to considering whether annexation would serve the general good of the territory sought to be annexed, the board retains full discretion to make the factual determination as to whether that standard has been met. *E.g.*, *Middletown v. McGee* (1988), 39 Ohio St.3d 284, 288, 530 N.E.2d 902, 906; *Lariccia v. Mahoning Cty. Bd. of Commrs*. Contrary to the implications in the majority opinion, no opinion of this court, including *Middletown,* has limited the board of commissioners' discretion as to what factors may be considered in determining whether an annexation will serve the general good of the territory. The policy of encouraging annexation, as stated in *Middletown*, goes only so far as it is "revealed by the statutes enacted by the General Assembly." *Id*. at 285, 530 N.E.2d at 903.

**{¶ 59}** R.C. 709.033 does not limit the factors that the board is to consider in determining whether annexation will be for the general good of the territory; it simply prevents the board from considering the effect of the annexation on other distinct entities, including the annexing city and the governmental body that would lose jurisdiction over the territory. Had the General Assembly intended to limit the factors a board could consider in determining what is for the general good of the territory, it would have expressed that intent in the statute.

**{¶ 60}** Instead of limiting the factors and information to be considered, the General Assembly in 1980 amended the hearing provisions contained in R.C. 709.032 to expand the amount of testimony and information that would be admissible at an annexation hearing by allowing "any person" rather than any "person interested" to appear at the hearing and support or contest the granting of the petition for annexation. 138 Ohio Laws, Part I, 409. The statute further provides that all affidavits presented at the hearing shall be considered by the board. This language clearly does not support the suggestion that the General Assembly intended to limit the factors the board may consider in making a factual

determination on whether annexation will benefit the territory sought to be annexed.

**{¶ 61}** Courts have consistently and without contest looked to factors such as the availability and extent of police services, emergency services, water and sewer hook-up availability and pricing, local laws that may provide commercial advantages to owners, and road maintenance issues when making a determination as to what will serve the general good of the territory. See, *e.g*., *Lariccia v. Mahoning Cty. Bd. of Commrs*. In fact all these issues were raised as factors in this case without challenge by the parties.

A

Availability and Quality of Public Services

**{¶ 62}** The court of appeals erred in stating that the board of commissioners may not use services as a justification to deny annexation unless it is shown that Newark "is unable to provide the necessary services that a city must provide." Once again, the court of appeals' decision seems to be premised on the proposition that it is impermissible to compare the level of services available to the territory in its current state with the level of services that would be available if annexation were granted. For the reasons discussed above, this limitation is unsupported in law or logic. When the board determines that annexation will serve the general good of the territory, it is inherently finding that some benefit to the territory will result from the annexation. See *In re Annexation of 118.7 Acres  in Miami Twp*. (1990), 52 Ohio St.3d 124, 131, 556 N.E.2d 1140, 1146; *Lariccia v. Mahoning Cty. Bd. of Commrs.,* 38 Ohio St.2d at 102, 67 O.O.2d at 99, 310 N.E.2d at 259.

**{¶ 63}** The court of appeals' decision, in effect, creates a legal presumption that annexation is always for the general good of the territory, absent some showing that the annexing city is totally incapable of providing  the territory with the minimum level of  "necessary services that a city must provide." This contradicts both the express terms of the annexation statutes and prior case law.

B

Interests of the Owner

{¶ 64} Both the appellant-petitioner and the court of appeals acknowledge that a determination of what is for the general good of the territory "presupposes what is good for the residents within the territory." Nothing in the statutes or previous case law suggests that the owner's desire to annex should have a determinative effect on whether the statutory requirements of R.C. 709.033 have been met. In fact, we have previously held that the general good of both the inhabitants of the territory and owners seeking annexation should be taken into account, and that the balancing of these interests is a "factual determination within the discretion of the board of county commissioners." *Middletown v. McGee*, 39 Ohio St.3d at 288, 530 N.E.2d at 906.

{¶ 65} I do not agree with the majority's holding that the court of appeals was correct to override the board's findings of fact because it believed the owner's wishes should be weighed more heavily than other factors. The majority appears to base this new law on the language in *Middletown v. McGee*, 39 Ohio St.3d at 286, 530 N.E.2d at 904.

{¶ 66} In *Middletown* we observed that one of the intentions of the General Assembly in enacting the annexation laws was "to give an owner of property freedom of choice as to the governmental subdivision in which he desires his property to be located." *Id*. This language was then cited in *In re Annexation of 118.7 Acres in Miami Twp*., 52 Ohio St.3d at 127, 556 N.E.2d at 1143. However neither of these cases involved a determination of what weight should be given to the desires of the owner in determining what was for the general good of the territory under R.C. 709.033(E).

{¶ 67} *Middletown* involved a petition for injunction against annexation and simply stated that an owner opposed to annexation did have a legal interest which would be adversely affected if annexation were granted. Thus, the court

determined that the threshold criterion for considering injunctive relief had been met.

{¶ 68} In *Miami Township*, the court merely pointed out that the statutory structure enacted by the General Assembly provides for consideration of the landowners' interests through the petition requirements in the annexation statute. Neither case suggested that an owner's wishes should be determinative or even particularly weighted in the board's analysis of whether the annexation would serve the general good of the territory to be annexed.

{¶ 69} In this case, the record indicated that the sole owner of the property at issue had executed a sales agreement with a land developer. Both the owner and the developer's representative stated on the record that to their knowledge the sale and sales price were not conditioned upon whether the annexation petition would be granted. The owner will have no interest in the property once the sale is complete. Absent any evidence that he will profit from the annexation under the terms of the sale, he will neither suffer nor benefit from any decision regarding annexation. In contrast, as the territory is unquestionably going to be developed as a residential area, the future residents will be directly subject to the effects of annexation. Therefore, I cannot agree that under the facts of this case, the board of commissioners erred in finding that the interests of the future residents or inhabitants of the territory could outweigh the owner's desire to annex the territory.

C

Effects of High Density Residential Development

{¶ 70} There is no dispute that whether or not the annexation is granted in this case, the territory at issue will be used for residential development. Annexation has been requested in order to allow the developers to take advantage of Newark's zoning laws, which allow for a greater density of residential housing than is currently available for this territory under the Granville Township zoning laws.

**{¶ 71}** Despite the clear evidence that the only real effect of annexation on the territory is the density of the residential housing that will be constructed, and despite its acknowledgment that some of the effects of high density housing could negatively impact the property, the court of appeals prohibited consideration of these effects when determining whether annexation would serve the general good of the territory.

**{¶ 72}** The court of appeals would have us presume that any problems, except school overcrowding, resulting from high density residential development will be adequately addressed by the governmental body with jurisdiction over the property. Even if such a presumption would be appropriate in the absence of any contrary evidence on the record, it would not apply in this case, where the record is replete with testimony indicating that the effects of high density housing cannot be adequately addressed by the city of Newark.

**{¶ 73}** Admittedly some of the testimony concerning these issues was contested. However, it is within the board's discretion to resolve those conflicts and determine which testimony is credible. In this case the board cited several possible negative effects of high density housing.[6]

D

School Issues

**{¶ 74}** Perhaps the most important issue presented by this case is whether the board of commissioners may or should consider the impact a proposed annexation is likely to have on the school services available to the territory that would be annexed. Does the "general good of the territory" include a consideration of the adequacy of schools just as it includes the adequacy of sewers, streets, and

---

6. Some of these adverse effects include projected increases in traffic accidents and fatalities, traffic congestion, school bus safety, school overcrowding, and potential problems stemming from sewer overflow due to excessive burdens on the sewer system.

safety?  Can we accept the premise that the available school services have less of an effect on a territory than traffic congestion or the owner's commercial gain?

**{¶ 75}** Educational services are of great importance to Ohio residents.  They impact not only the children who attend the schools, but, through the children's interaction with families, neighbors, and businesses, educational services also affect the surrounding community at every level.  The relative quality of school services can have a much greater long-term effect on a territory and its residents than do other public services.  Educational services affect property values, crime rates, employment rates, and many other socio-economic factors that may benefit or harm the territory seeking to be annexed.

**{¶ 76}** Nothing in the annexation statute or case law prohibits the board from considering school issues when determining what is for the general good of the territory.  Judicial imposition of such a prohibition would be an arbitrary and unsound restriction on the discretion of the board of commissioners, which is charged with considering all evidence presented at an annexation hearing.  R.C. 709.032; *Middletown v. McGee*, 39 Ohio St.3d at 288, 530 N.E.2d at 906; *In re Annexation of 118.7 Acres in Miami Twp.*, 52 Ohio St.3d at 132, 556 N.E.2d at 1147.

**{¶ 77}** In *Miami Twp.* we held that "it is not appropriate for the board to build a case for or against an annexation.  Nor should this court mandate consideration of certain matters outside the terms of the statute.  The General Assembly has not seen fit to so condition the board's determination." *Miami Twp.*, 52 Ohio St.3d at 131-132, 556 N.E.2d at 1146.  This constraint on court-imposed conditions applies equally to court-imposed prohibitions which are not based upon the statute.

**{¶ 78}** The arguments against considering school issues in the annexation determination are not persuasive.  The appellant categorizes the effect of annexation on the schools as "conjecture" and "speculation" because no houses

have yet been built and there is no guarantee as to the number of children who will live in the area. This is no more persuasive than saying we cannot consider the effect of annexation on police services to the territory because we do not know whether there will be any crimes committed or indeed whether anyone will actually buy homes there and need protection.

{¶ 79} The fact is, all parties agree that the statistical evidence presented to the board supports a finding that significantly more children will enter the Granville schools if the territory is annexed to Newark than will enter the schools if the territory is not annexed. There is substantial evidence on the record to support a finding that this incremental increase in student population will negatively affect the quality of educational services available to the residents of the territory seeking to be annexed. As the number of students increases, the fiscal condition of the schools would deteriorate at least to some degree because the cost of providing educational services is "far greater than the revenues that would be generated by the real estate taxes that would be derived from the new residential properties and by the increased state per pupil basic aid." Thus, there is substantial, reliable, and probative evidence to support a finding that the quality of school services available to the territory would decrease if annexation were granted.

{¶ 80} Contrary to the majority's holding, the State Board of Education does not have exclusive authority over all school-related issues that arise due to annexation. R.C. 3311.06 applies only when the annexation results in a *transfer* of a school district. If the entire territory of a school district is annexed to a city, the territory automatically becomes a part of the city's school district. R.C. 3311.06(C)(1). In this case, however, the territory sought to be annexed is only part of a school district. Under R.C. 3311.06(C)(2) the transfer of a partial school district can occur either upon agreement of the two school districts involved or upon request of a transfer by one of the districts and approval of the State Board of Education.

{¶ 81} The record in this case shows that Granville and Newark have not agreed to any transfer of the territory's school district. In fact, the record specifically indicates that Newark is unwilling to accept the children from the territory into its school district. Further, nothing in the record indicates that Granville would petition for such a transfer or that the State Board of Education would approve it if requested. The record does indicate that the residents and developers would not be likely to support a transfer because one of the key marketing points for the houses in the development is that they will be in the Granville school system.

{¶ 82} When a transfer of a partial school district is not agreed to or requested, R.C. 3311.06 has no application to the annexation proceedings. This does not mean that the annexation will have no effect on the school services available to the territory seeking to be annexed. Any school-related issues raised at an annexation hearing that do not involve the transfer of school districts may and should be considered by the board of commissioners in determining what is for the general good of the territory.

E

Income Tax

{¶ 83} The majority, without comment, adopts the court of appeals' holding that income tax cannot be considered a factor in determining what is for the general good of the territory. The court of appeals acknowledged in a previous unreported case that payment of a city income tax is a consequence of annexation; however, because the tax would be unavoidable if annexation were granted, the court held that it should not be considered at all. This is the only case cited by either the court of appeals or the majority in support of such a holding.

{¶ 84} Financial issues have been accepted as appropriate factors for consideration in other annexation cases. The *Lariccia* case cites evidence regarding the comparative cost of sewer, water, and fire insurance that would result from

25

annexation, as well as commercial advantages to the owner of the property. *Lariccia v. Mahoning Cty. Bd. of Commrs.*, 38 Ohio St.2d at 102, 67 O.O.2d at 99, 310 N.E.2d at 259. There is no basis for allowing consideration of some financial issues affecting the territory but disallowing consideration of others. While the existence of a city income tax might not be given much weight when balanced against other positive factors affecting the territory upon annexation, it clearly has an effect on the residents of the territory and therefore is a proper factor for consideration.

III

Board of Commissioners' Findings are Supported by a Preponderance of Substantial, Reliable, Probative Evidence on the Record.

{¶ 85} The transcript of the board of commissioners' hearing provides a preponderance of substantial, reliable, and probative evidence in the record upon which the board of commissioners could have found that annexation would not serve the general good of the territory.

{¶ 86} There is some question as to whether the sewer system in Newark is capable of handling the amount of added wastewater that would come from the projected development. Approval of annexation would create a split of jurisdiction on one of the public roadways, affecting street maintenance, police protection, and speed limits. Ditch maintenance was not adequately addressed by the parties. Emergency services and water services would not improve with the annexation and, therefore, are at best a neutral factor in the determination. School services for the residents of the territory would suffer from the higher density housing allowed under Newark zoning laws. Residents would be subject to an income tax if annexation were granted. The record also contains evidence that traffic problems, both in terms of congestion and accident rates, would worsen if annexation were approved. While some contradictory evidence was introduced as to the extent of these problems, it is clearly with the purview of the board of commissioners to

assess the credibility of the witnesses and assign weight to their testimony. The court of appeals abused its discretion in refusing even to consider these factors in its review.

{¶ 87} The court of common pleas reviewed the board of commissioners' decision as well as the "whole record" as required under R.C. 2506.04 and found that the decision was not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with these findings, the court affirmed the board of commissioners' decision.

{¶ 88} When reviewing the common pleas court's decision, the court of appeals is limited in its scope of review and must affirm unless, as a matter of law, the decision of the trial court is not supported by a "preponderance of substantial, reliable, and probative evidence." R.C. 2506.04. In reviewing this standard as a matter of law, the court of appeals is required to give deference to the discretion of the board of commissioners in weighing the testimony and balancing the factors affecting the territory. Neither the court of appeals nor the majority so limited the scope of review.

IV

Conclusion

{¶ 89} As I believe there is substantial, reliable, and probative evidence on the whole record to support the decision of the board of commissioners, I would uphold its decision denying the annexation petition.

COOK, J., concurs in the foregoing opinion.

_____