OPINION
This case involves a petition to annex 163.182 acres of land currently located in Bethel Township in Miami County. The owner of the land, Siler Investment Company, filed a petition through its agent, Kenneth Golonka, to have this territory annexed into the city of Huber Heights. Following a hearing before the Miami County Board of Commissioners, the board denied the petition, finding that the general good of the territory would not be served by the annexation. On appeal, the trial court affirmed this finding. Having appealed to this court, the petitioners have raised the following assignment of error:
 The Court of Common Pleas erred, as a matter of law in holding the general good was not served by this one-hundred percent landowner annexation.
The initial appeal of an administrative order granting or denying annexation is made to the common pleas court. Smith v. Granville Twp.Board of Trustees (1998), 81 Ohio St.3d 608, 612. R.C. 2506.04 defines the scope of a court's review in an administrative appeal as follows:
 "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided by the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."
Pursuant to the statute, a party may then appeal the trial court's decision to the court of appeals on questions of law. This appeal is more limited, requiring the appellate court to affirm the trial court "unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." Smith, 81 Ohio St.3d at 613.
Under R.C. 709.033, a petition for annexation must be granted if all of the requirements therein have been satisfied. The ultimate focus of the statute, though, is that the general good of the territory sought to be annexed must be served by the annexation. Id. The supreme court explained the "general good of the territory" test in relation to an appellate court's standard of review in Smith. In this regard, the appellate court in Smith had found that the trial court had applied a "best for the territory" test instead of the proper "general good of the territory" test to the facts of the case. The supreme court held that reviewing the trial court's use of the improper test was within the appellate court's province because the test was applied improperly as a matter of law. Id. at 614-15.
When determining the "general good of the territory," the preference of the property owners should be a key consideration. In fact, "[i]n enacting the statutes governing annexation, one of the intentions of the legislature was `to give an owner of property freedom of choice as to the governmental subdivision in which he desires his property to be located.'" Id. at 614, citing Middletown v. McGee (1988),39 Ohio St.3d 284, 285. We recognize that the spirit and purpose of Ohio annexation laws are to encourage annexation and give weight to the desires of property owners as to which political subdivision they prefer. Id.
Nevertheless, the cases indicate that one hundred percent owner approval of the annexation does not end the inquiry entirely. Specifically, the Smith court endorsed the appellate court's finding that "unless it is shown that the city of Newark is unable to provide thenecessary services that a city must provide, the commissioners may not use services as a justification to deny annexation." Id. at 615 (Emphasis added). This statement clearly places a qualification on the one hundred percent owner annexation that there must be evidence that the city can provide necessary services.
Petitioners also rely heavily on our prior case of Golonka v. BethelTwp. Bd. of Trustees (Dec. 8, 2000), Miami App. No. 2000-CA-33 (GolonkaI), while urging us to reverse the trial court's decision affirming the board. Although the main focus in Golonka I was whether the territory was unreasonably large, we also addressed the "general good of the territory" test. Of particular interest to the petitioners was our explanation of the holding in Smith:
 "The Court strongly implied that the test for general good of the annexed property is satisfied if 100% of the property owners seek annexation. In this regard, the court stressed that services may not be used to justify denial, unless the opposing party proves the annexing city cannot provide needed services." (Citation omitted) Golonka, Miami App. No. 2000-CA-33, at p. 1.
The actual language of Smith, as quoted previously, does not specifically place the burden on either party to prove that the city cannot provide necessary services. Again, the language is "unless it is shown" that the city cannot provide necessary services. We further clarified our interpretation of the law in the final analysis of GolonkaI, where we stated:
 "In the present case, 100% of the property owners sought annexation, and the evidence clearly indicated that Huber Heights could provide all needed services. Therefore, the Board and the trial court were legally required to find that annexation would serve the general good of the territory being annexed." (Emphasis added) Id. at p. 2.
This language, as well as the analysis in Smith, indicates that one hundred percent owner agreement and assurances that the city is able to provide services to the territory are necessary to approve the annexation.
In the present case, evidence was presented that Tri-Cities' Authority Wastewater Treatment Plant provides sewer services for most of Huber Heights. Federal law, enforced by the Ohio EPA, requires that each plant only treat sanitary sewage generated from areas defined within the Section 201 facilities plan and within the Section 208 water quality management plan for that wastewater treatment plant. Testimony was undisputed that the territory sought to be annexed was not within Tri-Cities' 201 or 208 plans. In addition, witnesses for both parties testified that this territory was instead located within the Clark County Southwest Wastewater Treatment Plant's 201 plan and not currently within any 208 plan.
In response to these assertions, Petitioners argued that these plans could be amended and in fact have been in the past. However, no efforts had been made prior to the hearing to request such amendments. This highlights a major distinction between the annexation request for this territory and two other recently annexed territories from Bethel Township to Huber Heights. Though not at issue in those cases, the evidence indicated that, at the time annexation was requested, the city had already obtained amendments to the 201 and 208 plans. Conversely, at the time of the hearing in this case, there was no guarantee that Huber Heights would be able to obtain these amendments and provide sewer service to this territory. In fact, the township presented evidence that recent changes in the law have compelled the EPA to take a closer look at 201/208 plan amendments, possibly making them more difficult to obtain.
Petitioners further alleged that the "necessary" services referred to in Smith as cited in Golonka I should be those services considered "necessary" by the owner. Indeed, the owner of the territory here involved testified that water and sewer services were the main attractions of the annexation to Huber Heights.
Moreover, the city's "alternate plan" to contract with Clark County to provide sewer service if for some reason these amendments would not pass is similarly not guaranteed. The township presented uncontroverted evidence from an engineer that the wastewater treatment plant in Clark County is approaching maximum capacity, so Clark County could be deterred from contracting with Huber Heights despite having done so in the past. This testimony was bolstered by testimony from the Huber Heights engineer who agreed that Clark County's plant was nearing capacity. He made this statement in support of his belief that the EPA would approve amendments to the 201 and 208 plans to Tri-Cities since the alternative in Clark County was less feasible.
In reviewing the trial court's decision, we find that the court was mindful of both the purpose of Ohio annexation law and the desires of the landowner. Nonetheless, the court was also cognizant of its role in reviewing the board's decision. The trial court repeatedly stated throughout its decision that this was a very close case, heightened by the one hundred percent landowner support of the annexation. Specifically, the trial court stated:
 "This court may well have not made the same conclusions as the Board as to whether the City of Huber Heights will be able to provide water and sewer services to the territory at issue. However, when it gives the Board the benefit of determining and weighing credibility, and considers the overall evidence, the Board was presented conflicting considerations and evidence.
 "This Court is troubled by the fact that the Board denied annexation when the sole landowner expressed his desire to have the territory annexed notwithstanding the apparent problems cited by the Board. However, to say that the petition should be granted just because the sole land owner desires annexation would remove all discretion of the Board. Converting the Board's role to rubber stamp status would be clearly contrary to law."
We echo the sentiments expressed by the trial court. Although we may not entirely agree with the final conclusion of the board, we have an even more limited review than the trial court. Based on the conflicting considerations and evidence presented to the board and to the trial court, we cannot find as a matter of law that the decision below was not supported by a preponderance of competent, credible evidence.
Based on the foregoing, the sole assignment of error is overruled. Judgment affirmed.
WOLFF, P.J,. and YOUNG, J., concur.