ROTH, Appellee,

v.

OHIO DEPARTMENT OF COMMERCE, DIVISION
OF FINANCIAL INSTITUTIONS, Appellant.

[Cite as *Roth v. Ohio Dept. of Commerce, Div. of Financial
Insts.*, 171 Ohio App.3d 326, 2007-Ohio-2015.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060378.

Decided April 27, 2007.

Kenneth D. Roth, pro se.

Marc Dann, Attorney General, Matthew J. Lampke, Deputy Attorney General, and Theodore L. Klecker, Assistant Attorney General, for appellant.

MARK P. PAINTER, Presiding Judge.

{¶ 1} Sometimes the government is too zealous in protecting us. Here, the defendant-appellant, Ohio Department of Commerce, Division of Financial Institutions ("DFI"), denied plaintiff-appellee Kenneth D. Roth's application for a loan-officer license for failing to disclose two misdemeanor convictions from 15 years, now 18 years, earlier. Roth appealed, and the trial court reversed the DFI's decision and ordered it to award Roth a "conditional loan officer license" as long as he was not convicted of a new criminal offense. The DFI, ever vigilant, has appealed to this court.

{¶ 2} And because the statute does not provide for conditional loan-officer licenses, we must reverse.

### I. A 59–Word Question

{¶ 3} In March 2002, Roth submitted a loan-officer license application to the DFI. Question five asked the applicant, "Have you or has any company for which you have been an officer, or more than 5% owner or director, ever been convicted of or pleaded guilty to any criminal offense, including, but not limited to, theft, receiving stolen property, embezzlement, forgery, fraud, passing bad checks, money laundering, or drug trafficking, or any criminal offense involving money or securities?"

{¶ 4} This convoluted sentence scores a zero on the Flesch Reading Ease test. And on the Flesch–Kinkaid grade level, it scores a 28.6, meaning that one needs 28.6 years of schooling to readily understand it.

{¶ 5} The question tracks R.C. 1322.031(A)(2) except that the statute only sets out the specific criminal offenses; the "any criminal offense, including, but not limited to" probably is justified under R.C. 1322.031(A)(4), which states, "Any further information that the superintendent requires." If the DFI wanted to know whether the applicant had been convicted of *any* criminal offense, why didn't it just say so? Instead, it threw that simple inquiry into a 59–word sentence. If the government asks a question, it should be in plain English.

{¶ 6} Roth answered the question, "No." Unfortunately for Roth, that was not the truth. In 1988, at 18, Roth pleaded guilty to passing bad checks,[1] and less than a year later, he pleaded guilty to criminal damaging.[2] The passing-bad-checks charge came about after he had agreed to cash a check for a girlfriend. His girlfriend had stolen the check from her mother and then had forged her

---

1. R.C. 2913.11.

2. R.C. 2909.06.

mother's name. Roth maintained that he did not know that his girlfriend had forged the check, agreed to reimburse the girlfriend's mother ($100), and pleaded guilty to passing bad checks.

{¶ 7} Roth's conviction for criminal damaging also occurred when he was 18 years old, after he had attended a Halloween party where the parents of the partygiver were out of town. The party got out of control, and some of the homeowners' personal property was damaged. Roth was originally charged with aggravated burglary because the partygiver claimed that he was not at the party and did not know anything about it. The partygiver later recanted, and the charge was amended to criminal damaging. Roth pleaded guilty to criminal damaging after he admitted to being at the party, but he claimed that he had pleaded guilty only because he could not prove that he did not damage any of the property.

{¶ 8} A year after Roth's application, in April 2003, the DFI notified Roth that it intended to deny his loan-officer application because "(1) he had been convicted of passing bad checks in 1988 and he had not proven that he is honest, truthful, and of good reputation, and that there is no basis in fact for believing that he will not commit another offense involving bad checks or offense involving money; (2) in 1989 he had been convicted of criminal damaging; (3) he violated R.C. 1322.07(A) by failing to disclose his convictions on his loan officer license application; (4) he violated R.C. 1322.07(B) by making a false statement of a material fact or by omitting a statement required on the licensing application; and (5) because his character and general fitness did not command the confidence of the public and warrant the belief that his business will be operated honestly and fairly in compliance with the purposes of R.C. 1322.01 [through] 1322.12—the Ohio Mortgage Broker Act."

{¶ 9} Roth appealed the DFI's decision, and an administrative hearing occurred, at which Roth explained his convictions. The hearing officer noted in his recommendation that Roth seemed to have changed his life after his convictions. Roth had lived on his own during his high-school years and did not finish high school. After his two criminal convictions, Roth passed the General Educational Development test ("GED"), was admitted to Southern Ohio College for one semester, and then transferred to Miami University. Roth graduated from Miami with a bachelor's degree in finance, met and married his wife, had two children, and was active in his church and in coaching his children's soccer and baseball teams.

{¶ 10} The hearing officer noted that Roth's failure to disclose his criminal convictions was a violation of R.C. 1322.07(A). (R.C. 1322.07(A) forbids a person from obtaining a license through any false or fraudulent representation of a material fact or through any substantial misrepresentation in a license applica-

tion.) But because the convictions occurred within a brief period of time 15 years earlier when Roth was 18, and because Roth had made a "remarkable redirection in his life," the hearing officer recommended that Roth be granted a license. The hearing officer based this recommendation on his findings that Roth had shown by a preponderance of the evidence that (1) he was honest, truthful, and of good reputation; (2) there was no basis for believing that he would commit a similar offense again; and (3) his "character and general fitness command the confidence of the public and warrant the belief that the business will be operated honestly and fairly in compliance with" R.C. 1322.01 through 1322.12.

{¶ 11} It took *two more years* for the DFI to issue an order denying Roth's loan-officer license application. The wheels grind slowly, but they ground up Roth. In its June 2005 order, the DFI rejected the hearing officer's recommendation because it did not believe that Roth had met his burden to show that his employment record and activities since his convictions demonstrated that he was honest, truthful, and of good reputation. The DFI essentially did not believe that the evidence put forth by Roth, his testimony as well as that of his two employers, who had known him for less than two years, had met his burden to show that he was honest, truthful, and of good reputation.

{¶ 12} Roth appealed this decision to the Hamilton County Court of Common Pleas. The magistrate recommended affirming the DFI's final order, but the court issued an order modifying the magistrate's decision and conditionally granting a loan-officer license. This appeal followed.

## II. Standard of Review

{¶ 13} A person denied a license may appeal from the agency's order to the common pleas court in the county where the person lives.[3] Under R.C. 119.12, the common pleas court may consider the whole record to determine whether the agency's order is "supported by reliable, probative, and substantial evidence and is in accordance with law." And the judgment of the common pleas court shall be final and conclusive unless reversed, vacated, or modified on appeal.[4] The appeal can be taken by either the party or the agency, and it should proceed under the Ohio Rules of Appellate Procedure and R.C. Chapter 2505.[5]

{¶ 14} The Ohio Supreme Court has construed R.C. 2506.04 so that the common pleas courts and the courts of appeals apply different standards of

3. R.C. 119.12.

4. Id.

5. Id.

**330**

review for administrative appeals.[6] The common pleas court considers the whole record, "including any new or additional evidence submitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." [7]

{¶ 15} But the standard of review to be applied by the court of appeals is more limited.[8] As the court noted in *Henley v. Youngstown Bd. of Zoning Appeals,* "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. * * * It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." [9]

### III. Loan–Officer Licenses

■ {¶ 16} In its first assignment of error, the DFI argues that the trial court erred as a matter of law by ordering it to issue a conditional loan-officer license. The DFI maintains that the Ohio Mortgage Broker Act does not provide for conditional or provisional licenses. The DFI is correct.

{¶ 17} R.C. Chapter 1322 governs loan-officer licensure and does not provide for the issuance of a conditional license. "No person * * * shall act as a loan officer without first having obtained a license from the superintendent." [10] And for a person to obtain a loan-officer license, that person must meet the conditions for licensure as prescribed in R.C. 1322.041. Those conditions include having never been convicted of or pleaded guilty to any criminal offense.[11] If the person

---

6. See *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433.

7. Id., citing *Smith v. Granville Twp. Bd. of Trustees* (1998), 81 Ohio St.3d 608, 612, 693 N.E.2d 219, citing *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 206–207, 12 O.O.3d 198, 389 N.E.2d 1113.

8. Id.

9. Id., citing *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264.

10. R.C. 1322.02(B).

11. R.C. 1322.041(A)(3).

has been convicted of or pleaded guilty to any criminal offense, the applicant must then prove by a preponderance of the evidence that "the applicant's activities and employment record since the conviction show that the applicant is honest, truthful, and of good reputation, and there is no basis in fact for believing that the applicant will commit such an offense again." [12]

{¶ 18} While we understand the trial court's desire to allow Roth to obtain a loan-officer license, its manner of doing so was not appropriate and contrary to law. Roth has seemingly changed his life—he appears to be a model citizen with a wife and two children, he is active in his church, and he volunteers as a coach for his children's athletic teams. His crimes were misdemeanors and were committed when he was 18 years old, some 18 years ago. As the DFI hearing officer noted in his recommendation, Roth had made a "remarkable redirection in his life."

{¶ 19} Despite this remarkable redirection, we are constrained to hold that the trial court erred as a matter of law by ordering DFI to issue a conditional loan-officer license so long as Roth refrained from committing any other criminal offense. The statute simply does not provide any authority for the trial court to do so. We thus sustain the DFI's first assignment of error and reverse the judgment of the trial court. The DFI's second assignment of error is now moot.

{¶ 20} We remand the cause to the trial court. Perhaps that court can take evidence and decide whether the DFI's decision was "supported by reliable, probative, and substantial evidence and [wa]s in accordance with law."

{¶ 21} We also note that the statute does not preclude Roth from reapplying for a loan officer license. As the hearing officer noted, had Roth answered question five correctly and disclosed the convictions, "this Hearing Officer would have little difficulty concluding that the events occurred so long ago and under circumstances so markedly different from today's circumstances that [Roth] would be unlikely to commit such offenses again and that he should be granted a license."

{¶ 22} We also suggest to the DFI that it revise its application to be readable by ordinary citizens.

Judgment reversed
and cause remanded.

HENDON, J., concurs.

SUNDERMANN, J., concurs in judgment only.

---

12. Id.