MOORE et al., Appellants,

v.

UNION TOWNSHIP BOARD OF TOWNSHIP TRUSTEES, Appellee.

[Cite as *Moore v. Union Twp. Bd. of Twp. Trustees,*
152 Ohio App.3d 535, 2003-Ohio-2085.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 2002–CA–69.

Decided April 25, 2003.

Catherine A. Cunningham and Richard C. Brahm, for appellants.

Wanda L. Carter, for appellee.

———————

BROGAN, Judge.

{¶ 1} This case involves the attempted annexation of about 618.4 acres from Union Township to the city of Union, Ohio. In October 2001, Joseph Moore, agent for several property owners, filed a petition with the Miami County Board of Commissioners ("board"), asking that the owners' property be annexed to the city of Union. All property owners in the proposed annexation area had agreed to the annexation, except the Miami Conservancy District ("MCD"). MCD owned 34 acres of property that was located in the floodplain of the Stillwater River. MCD did not oppose annexation; instead, MCD simply had a longstanding policy of not signing petitions for annexation on property that it owned.

{¶ 2} In February 2002, the board held an annexation hearing, where the petitioners presented testimony and documentary evidence. Annexation was opposed by the Union Township Trustees ("trustees"), who claimed that the proposed annexation area was unreasonably large and that annexation would not serve the general good of the territory. After hearing the evidence, the board denied the petition. While the board rejected the claim that the area was unreasonably large, it did find that annexation would not serve the general good. In this regard, the board concluded that the petitioners had failed to show that the city of Union could provide the territory with adequate and appropriate services. Specifically, the board said that "under present circumstances, the City of Union cannot provide water and sewer service to the territory to be annexed."

{¶ 3} Following the denial, Moore filed an administrative appeal with the Miami County Common Pleas Court. The common pleas court did not take additional evidence and considered only the evidence presented to the board. Although the court was troubled by the landowners' lack of adequate water supplies, it did affirm the board's decision. The basis for the court's decision was that the majority of the proposed annexation area was not within the city of Union's facilities-planning area. Accordingly, the court concluded that the city did not have the present ability to provide sewer service to the annexation area.

{¶ 4} The proposed annexation area consists of eight parcels that are mainly agricultural. About three-quarters of the property is in the floodplain of the

Stillwater River. Seven residences are in the annexation area, but one was uninhabitable at the time of the annexation hearing, due to well-contamination problems. The largest parcel of property is a 473–acre tract owned by Waterwheel Farms. This particular property is used as a farm operation and contains three rental residences.

{¶ 5} As we mentioned, the annexation petition was signed by all property owners except MCD. The owners indicated that their properties were currently being served by wells and septic tank systems. None of the properties had sewer or water services provided by any public or private entity.

{¶ 6} Several owners mentioned problems obtaining adequate water from their wells, and all signing owners said that they wanted to receive water from the city of Union. For example, the owners of one ten-acre parcel and a residence said that they had to limit use of water to meet their daily needs. These owners could not do laundry in their home because the water from their well was insufficient to fill the washing machine. Furthermore, if they showered in the morning, they did not have enough water to wash their dishes and flush the toilets. Owners of another property had to abandon their home due to well contamination and inability to successfully drill new wells that would produce water.

{¶ 7} The water problems in the annexation area are due to its hydrogeology, which consists of clay till overlying nonwater-bearing limestone bedrock. This type of hydrogeology yields less than two gallons per minute of water, and productive wells cannot be drilled. In contrast, the city of Union's wells are drilled within a subaquifer (the Stillwater Tributary) of the Great Miami Buried Valley Aquifer. Both the aquifer and subaquifer are prolific water producers. They also contain a sand and gravel material that provides a reasonable filtering mechanism for contaminants.

{¶ 8} The city of Union has water and sewer hookups available for the proposed annexation area, and has agreed to waive fees for water and sewer taps. The problem, however, is that part of the proposed annexation property lies within the city of Union 201 facilities-planning area, and the other part (the Waterwheel Farms parcel) is in the village of West Milton 201 planning area. Most of the Waterwheel Farms parcel is zoned as a special flood district and would not be open to development.

{¶ 9} Section 208 of the Federal Water Pollution Control Act Amendments of 1972, Pub.L. 92–500, 86 Stat. 839 (also referred to as the Clean Water Act and now codified as Section 1288, Title 33, U.S.Code), encourages development of areawide waste-management plans. See *Columbus & Franklin Cty. Metro. Park Dist. v. Shank* (1992), 65 Ohio St.3d 86, 125, 600 N.E.2d 1042. Under the Act, governors of each state must "designate areawide management agencies to plan, develop, administer and construct centralized wastewater treatment facilities."

Id. See, also, Section 1288(c)(1), Title 33, U.S.Code. The parties to the present case agree that Miami Valley Regional Planning Commission ("MVRPC") is designated as the local 208 planning agency for the area that includes the proposed annexation property.

{¶ 10} Consistent with its duties, MVRPC prepared a facilities plan for the Miami Valley area, and the Ohio Environmental Protection Agency ("OEPA") approved the plan. MVRPC designated various facilities-planning areas (called 201 facilities-planning areas or FAPs), which were to be served by separate water-pollution-control entities. The 201 designation refers to Section 201 of the Clean Air Act, which requires management of waste treatment on an areawide basis and authorizes grants for construction of publicly owned treatment works. See Pub.L. 92–500, Sections 201(c) and (g), 86 Stat. 833, now codified as Sections 1281(c) and (g), Title 33, U.S.Code.

{¶ 11} Because part of the proposed annexation area was outside the city of Union's 201 facilities-planning area, the trial court concluded that the city could not provide "necessary services," i.e., sewer services, to the area. Therefore, even though the court found the owners' evidence about inadequate water supply compelling, the court felt that it had to affirm denial of the annexation petitions. Moore now appeals, raising as a single assignment of error:

{¶ 12} "The trial court's decision upholding the Miami County Commissioners' denial of the annexation of 618.4 acres to the City of Union on the grounds that the 'general good' of the territory would not be served is illegal, arbitrary, capricious, unreasonable and/or unsupported by a preponderance of the substantial, reliable and probative evidence on the record as a whole."

{¶ 13} After reviewing the record and applicable law, we agree with Moore. Accordingly, the trial court judgment will be reversed.

{¶ 14} In reviewing administrative orders, common pleas courts may find an order " 'unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.' " *Smith v. Granville Twp. Bd. of Trustees* (1998), 81 Ohio St.3d 608, 612, 693 N.E.2d 219, quoting R.C. 2506.04. Common pleas courts weigh the evidence in the record and may also consider new or additional evidence. Id. In contrast, appellate courts have a more limited role, and must affirm, unless they find, " 'as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence.' " Id. at 613, 693 N.E.2d 219, quoting *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848.

{¶ 15} In *Smith,* the Ohio Supreme Court held that in considering annexation petitions filed under R.C. 709.33, the board "must grant the annexation if it is

determined that the annexation will be for the 'general good' of the territory sought to be annexed." Id. at paragraph one of the syllabus. Notably, this does not mean what is "best for the territory," nor does it mean, where 100 percent of the owners seek annexation, that services are compared to decide what is good for the territory. Id. at 614–615, 693 N.E.2d 219.

{¶ 16} In the present case, the trial court followed this line of reasoning, since 100 percent of the private property owners favored annexation. We agree with the trial court that the circumstances of this case do not pose a situation where services should be compared. The trial court also noted, however, that even in these circumstances, annexation is not automatically granted. Instead, the annexing city must also be able to provide all necessary services. In finding that the city of Union could not provide "necessary" wastewater services, the trial court relied on our prior decision in *Golonka v. Bethel Twp. Bd. of Trustees*, Miami App. No. 2002–CA–8, 2002-Ohio-3565, 2002 WL 1483255.

{¶ 17} In *Golonka*, we found that the city of Huber Heights could not provide all necessary (sewer) services because the proposed annexation area was not within Huber Height's 201 facilities plan, nor was it within the Section 208 water-quality-management plan for the wastewater treatment plant covering Huber Heights. Id. at ¶ 14. In this regard, we placed significance on the fact that Huber Heights had not attempted to amend the plans. In fact, we used that point to distinguish *Golonka* from prior situations ·where annexation had been allowed. Id. at ¶ 15.

{¶ 18} Union Township argues that *Golonka* requires us to affirm denial of the annexation petition. In contrast, Moore contends that the petition should have been granted because the owners will not lose any material benefit if annexation is granted. Specifically, the owners do not currently enjoy sewer service and will lose nothing if annexation is granted. Moreover, the owners will gain the benefit of city water and other city services. Accordingly, Moore claims that annexation will be for the general good of the territory.

{¶ 19} As support for this position, Moore relies on our prior decision in *Brahm v. Beavercreek Twp. Bd. of Trustees* (2001), 143 Ohio App.3d 205, 757 N.E.2d 857. In *Brahm*, we stressed that Ohio has a policy of encouraging annexation. Id. at 208, 757 N.E.2d 857. We also said:

{¶ 20} "In considering the general good of the property to be annexed, the commissioners do not have to be presented with evidence that the annexation will produce a discernible benefit to the land to be annexed; rather, they must be shown merely that no material benefit which the land currently enjoys will be lost if the proposed annexation takes place." Id. at 209, 757 N.E.2d 857.

{¶ 21} After considering the record and applicable law, we agree with Moore that the owners will not lose any material benefit if annexation is granted. Notably, the trial court did not focus on this point, probably because it did not have the advantage of our opinion in *Smith v. Bethel Twp. Bd. of Trustees*, Miami App. No. 2002–CA–32, 2003-Ohio-466, 2003 WL 203594, which was just recently issued in January 2003.

{¶ 22} In *Smith v. Bethel Twp.*, the petitioners wanted to be annexed to the city of Huber Heights, but their property was not within the area serviced by the wastewater plan covering Huber Heights, nor had Huber Heights sought an amendment to the plan. We did not find this issue significant, however, because the territory in question did not then have sewer service and had never enjoyed sewer service. The township also had no plans to extend sewer service if annexation did not occur. Id. at ¶ 12–13. As a result, we concluded that sewer services were not "necessary" under the facts of the case and that annexation should be allowed.

{¶ 23} Likewise, sewer services are not "necessary services" in the context of the present case. The evidence at the hearing indicated that the properties in the proposed annexation area use septic tanks. In addition, the trustees did not provide any evidence indicating that Union Township had either present or future plans to provide sewer service to the annexation area. Some evidence was submitted to the effect that water and sewer services might be available from the village of West Milton. However, this fact is irrelevant, since the properties are not presently part of the village of West Milton. Annexation to West Milton also would not resolve issues about amending the facilities plan. Since the proposed annexation area lies within the 201 planning area of both the city of Union and the village of West Milton, amendments would have to be sought for annexation to either jurisdiction. And finally, the property owners testified that they did not want to be annexed to West Milton. Among the reasons given was the fact that West Milton's water quality is inferior.

{¶ 24} Based on the above discussion, we find *Smith v. Bethel Twp.* controlling on the issues before us. We also find *Golonka* inapplicable, as the lack of existing sewer services was neither raised nor considered in that case.

{¶ 25} As an additional point, we note that a February 2000 addendum to the Status of the City–Owned and Operated Potable Water System and Wastewater System indicates that wastewater service to the proposed annexation area should be preceded by an amendment to the facilities-planning area. In this regard, the addendum states that "MVRPC recommends that the amendment to the FPA be submitted *after* the annexation process is complete." (Emphasis in original.) Although MVRPC's recommendation is not binding on this court, petitioners and

the city of Union can hardly be faulted for deferring to the approach suggested by the agency in charge of approving amendments.

{¶ 26} In view of the above discussion, we find that the trial court failed to properly consider the fact that sewer services were never enjoyed by the proposed annexation area, and were, therefore, not "necessary services." Due to this failure, the trial court's decision was, as a matter of law, unsupported by a preponderance of reliable, probative, and substantial evidence. *Smith*, 81 Ohio St.3d 608, 612, 693 N.E.2d 219.

{¶ 27} Moore has presented other arguments challenging the trial court's decision on sewer services, including a claim that the city has the right, under Sections 3 and 4, Article XVIII of the Ohio Constitution, to provide all public utilities within its borders. Moore acknowledges that the Clean Water Act mandates the creation of local 201 facilities-planning areas and regional 208 areawide treatment-planning areas. Moore also agrees that the state of Ohio has authority for creating and locating these planning areas. However, Moore contends that neither the General Assembly nor the OEPA can prevent the city of Union from providing sewer services to residents, so long as the city otherwise meets the requirements of the Clean Water Act as to treatment, effluent, discharge, and so forth. In view of our resolution of this case, we need not address these points.

{¶ 28} As a further matter, we note that both sides have discussed the issue of water services in their briefs. The board concluded that the city of Union did not have the ability to provide necessary services (both water and sewer), because doing so would be "in contradiction to the Environmental Protection Agency's 208 Water Quality Management Planning Area and the 201 Facilities Plan for the City of Union and the Village of West Milton." The trial court restricted its findings only to the issue of sewer services, and did not address water services.

{¶ 29} The finding we made about sewer services is also applicable to water services, i.e., water services are not "necessary," since the property owners currently do not enjoy water from sources other than their own wells. The trustees also do not currently plan to provide water services to this area. However, since the primary reason the owners want to be annexed to the city of Union is to alleviate what, in some cases, is a nearly critical water shortage, we will briefly address the issue of water services.

{¶ 30} Moore argues that the board's finding was erroneous as a matter of law because 201 facilities-planning areas are irrelevant to the provision of water from underground wells and do not in any way affect a public water utility. The trustees do not dispute this point in their brief. Instead, the trustees claim that evidence existed to support "the Board's finding and the decision of the court below that the city could not provide this essential service." In this regard, the

trustees contend that the board had evidence revealing that the city's supply capacity was insufficient, due to the city's promises to provide water to earlier-annexed territories.

{¶ 31} We disagree with the trustees. As we mentioned earlier, the trial court's decision did not address the sufficiency of water services. To the contrary, the court focused only on sewer services and the lack of an amendment to the FPA that would authorize the city of Union to provide sewer service to the entirety of the proposed annexation area.

{¶ 32} Moreover, we agree with Moore that Section 201 or 208 plans do not govern the supply of water. In this regard, we note that according to the declaration of purpose outlined in Section 1281(a), Title 33, U.S.Code, the goal of Congress was "[d]evelopment and implementation of *waste treatment* management plans and practices." (Emphasis added.) Section 1281(a) further stresses that "[i]t is the purpose of this subchapter to require and to assist the development and implementation of *waste treatment* management plans and practices which will achieve the goals of this chapter." (Emphasis added.) In addition, Section 1281(b) provides:

{¶ 33} "*Waste treatment management plans* and practices shall provide for the application of the best practicable *waste treatment technology before any discharge into receiving waters,* including reclaiming and recycling of water, and confined disposal of pollutants so they will not migrate to cause water or other environmental pollution and shall provide for consideration of advanced *waste treatment* techniques." (Emphasis added.)

{¶ 34} Accordingly, the stated purpose of the 201 and 208 facilities-planning areas and plans is to deal with waste treatment, not with the supply of water. The evidence presented by Union Township also reflects this fact. For example, the report of the trustees' expert, John Garner, distinguishes between waste water treatment and water supply. Garner's report contains various subsections, including subsection IV, which is titled "Water Pollution Control." Several items are listed under this subsection, including "A. 208 Regional Water Quality Management Plan Impact." Under this item A, Garner states:

{¶ 35} "In order to have a logical area-wide plan for providing non-duplicative sanitary sewer services, Congress mandated the preparation of P.L. 92–500 Section 208 Regional Water Quality Management Plans. In this area, MVRPC prepared such a plan. The OPEA approved that Plan and has used the Plan as the basis for approving detailed plans for the extension of sanitary sewers by various local water pollution control entities, such as Union and West Milton."

{¶ 36} After making these remarks, Garner discussed various aspects of waste management treatment. The topic of "Water Supply" was then addressed in

subsection "V" of the report. Unlike subsection IV, this subsection does not refer to either Section 208 or Section 201 plans or facilities-planning areas.

{¶ 37} Based on the above discussion, we find that the 208 and 201 plans or facilities planning areas were not relevant to water supply and would not have affected the city of Union's ability to provide water services to the proposed annexation area. Therefore, if the trial court had addressed this matter, it would have been required to find, as a matter of law, that the city could provide this service without interfering with the facilities-planning areas established by MVRPC.

{¶ 38} As a final point, we note that the alleged interference with the facilities-planning areas was the sole reason the board denied annexation. Specifically, the board did not say that the city of Union lacked an adequate water supply. Instead, the board's sole point was that the city of Union lacked the ability to provide necessary services, both water and sewer, because doing so would be "in contradiction to the Environmental Protection Agency's 208 Water Quality Management Planning Area and the 201 Facilities Plan for the City of Union and the Village of West Milton." Because this was not the case as a matter of law, the board's finding as to water services was erroneous and unsupported by substantial, reliable, and probative evidence. As we said, however, we do not need to rely on this point, since the proposed annexation area does not currently receive water service from any public or private entity. *Smith v. Bethel Twp.*, 2003-Ohio-466, ¶ 12–13, 2003 WL 203594.

{¶ 39} In light of the preceding discussion, the single assignment of error is sustained. Accordingly, the trial court judgment is reversed, and the petition for annexation shall be granted.

*Judgment reversed*
*and petition granted.*

WOLFF and GRADY, JJ., concur.