OPINION
{¶ 1} Plaintiff-Appellant, the Village of Antwerp ("the Village"), appeals from a judgment of the Paulding County Common Pleas Court, affirming the Paulding County Board of Commissioners' ("the Board") decision to deny the Village's annexation petition #1-03. The Village maintains that the trial court erroneously determined that the annexation would not serve the general good of the territory to be annexed. After reviewing the entire record, we find that the trial court did not act unreasonably, arbitrarily, or unconscionably in affirming the Board's decision. Accordingly, both of the Village's assignments of error are overruled, and the judgment of the trial court is affirmed.
 {¶ 2} In early 2003, the Village began circulating an annexation petition with the intent to annex into the Village seven parcels of land from Carryall Township (the "Township"). One of the seven parcels the Village was seeking to annex was a cemetery. The Village claimed that it was the owner of the cemetery and sought annexation of the cemetery and the other six parcels pursuant to R.C. 709.02 — 709.11. These statutes allow the owners of real estate contiguous to a municipal corporation to petition for annexation into the municipal corporation.
 {¶ 3} Before an annexation petition can be filed with the applicable board of county commissioners, the petition must contain the signatures of at least a majority of the owners of the real estate in the territory proposed for annexation. R.C. 709.02(C)(1). Herein, the seven parcels proposed for annexation have a total of eight owners. Besides the Village, the seven other owners are: Kirk Hopkins; Laurel Hopkins; Doris Reiff; Dana Corporation ("Dana Corp."); GenFed Federal Credit Union ("GenFed"); T.G. Specialists, Inc. ("T.G."); and Antwerp First Baptist Church ("First Baptist"). Kirk and Laurel Hopkins are husband and wife and own their parcel jointly. They maintain a business and a residence on the parcel. Doris Reiff also maintains a business on her parcel.
 {¶ 4} Eventually, the Village, Dana Corp., GenFed, T.G., and First Baptist signed the annexation petition. With five of the eight owners having signed the petition, the Village filed the petition with the Board. Pursuant to the requirements of R.C. 709.03, the Board set the matter for a hearing on June 16, 2003. At this hearing, a question was raised regarding whether the Village actually owned the cemetery. The Township opposed the annexation and claimed that it was the owner of the cemetery. Therefore, the Township argued that the Village's signature on the petition was invalid. If this was true, the petition would have lacked the required number of signatures to go forward. Consequently, the matter was continued until July 16, 2003, in order for the parties to determine who owned the cemetery.
 {¶ 5} At the July 16, 2003 hearing, conflicting evidence was introduced by both the Village and the Township pertaining to the cemetery's ownership. Both parties also introduced evidence regarding the merits of the underlying annexation petition.
 {¶ 6} Addressing the merits of the annexation petition, the Township argued that the annexation should not be granted because it would result in the creation of an "island." The island the Township was referring to is a parcel of land located in the Township that is contiguous to both the Village and the area proposed for annexation, but was excluded from the annexation petition. If the annexation would have been granted, the parcel would have remained in the Township but would have been completely surrounded by the Village.
 {¶ 7} Additional testimony was also presented by three landowners whose property was subject to the annexation petition. The landowners that testified were Kirk Hopkins, another landowner whose identity was undisclosed in the record, and a spokeswoman for GenFed. All three stated that they opposed the annexation. Furthermore, the GenFed spokeswoman testified that her company had attempted to withdrawal its signature from the petition, but that it had not been allowed to do so because it had failed to make the request within the time constraints of R.C. 709.03(C). Nevertheless, she stated that GenFed was currently opposed to the annexation based upon business concerns. This testimony was supported by a letter to the Board directly from GenFed's CEO, detailing that company's desire to withdraw its signature from the petition and oppose the annexation.
 {¶ 8} The only landowner who testified in support of the annexation was the Village. The Village put on evidence that the annexation might result in increased police protection and new traffic lights for the area to be annexed.
 {¶ 9} After considering all of the evidence before it, the Board denied the annexation petition. In its resolution, the Board stated the following reasons for denying the petition:
1. Unclear of the ownership of the Village of Antwerp cemetery.
2. An Island has been created.
3. The Board finds that it is unclear if the benefits to the territory sought to be annexed and the surrounding area outweigh the detriments to the territory proposed to be annexed and the surrounding area if the petition is granted.
 {¶ 10} The Village appealed this decision to the Paulding County Common Pleas Court pursuant to R.C. 709.07 and 2506. The trial court permitted the parties to introduce additional evidence and set the matter for a hearing on July 1, 2004. Prior to the hearing, the issue of whether the petition had the requisite number of signatures was disposed of by a joint stipulation of the parties that the Village was the legal owner of the cemetery.
 {¶ 11} At the July 1, 2004 hearing, the trial court heard testimony in favor of the annexation from the Village's administrator and police chief. The administrator testified that all seven parcels currently receive water service through the Village. Additionally, four of the seven parcels also currently receive sewer service from the Village. Due to the surcharges the Village assesses to sewer and water customers who are outside of its corporate limits, the annexation would result in the territory proposed for annexation receiving lower sewer and water rates. The administrator also mentioned the potential for the Village to install street and traffic lights along the roadways contained in the disputed territory. There was also evidence introduced that the Village would be able to maintain the same level of fire and emergency medical service after the annexation. Finally, the Village's police chief testified that his department would be able to provide the area to be annexed with the same level of protection that the Paulding County Sheriff's office was currently providing. No other evidence was presented in support of the annexation.
 {¶ 12} In opposition to the annexation, the trial court heard the testimony of Vicki Sefton on behalf of GenFed, Stan Reiff on behalf of Doris Reiff, and Laurel Hopkins. Each testified that they opposed the annexation due to concerns the affect of the annexation would have on their businesses. Specifically, the landowners stated that any savings in the sewer and water rates would be offset by an increase in the real estate taxes. They also cited a preference for operating under a township form of government and the potential for the Village to impose an income tax as reasons for opposing the annexation.
 {¶ 13} The trial court also heard the testimony of the Paulding County Sheriff and a Paulding County Trustee. The Sheriff testified that, in his opinion, the Village of Antwerp Police Department would not provide a greater level of service than he was already providing to the territory proposed for annexation. The Trustee testified that the roadways in the contested area were all either state or federal roads and that the decision of where and when to erect traffic lights would not be affected by the outcome of the annexation petition.
 {¶ 14} After considering this testimony, the testimony of the prior hearings, and all of the other evidence entered into the record, the trial court issued a judgment entry affirming the Board's decision to deny the annexation. This judgment was based upon a finding by the trial court that "the decision of The Board of County Commissioners is not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of the substantial, reliable, and probative evidence * * *." (Judgment Entry of the trial court.) The trial court also made the following specific factual findings:
1. The petition was signed by or on behalf of five (5) of the eight (8) owners of the real estate in the territory sought to be annexed.
2. One of the five original signers of the petition (GenFed Federal Credit Union) was unsuccessful in its attempt to withdraw its signature from the petition pursuant to Section 709.03(C) of the Ohio Revised Code due to its failure to meet the time constraints contained in that section.
3. At trial, the branch manger of GenFed Federal Credit Union testified that the Credit Union is opposed to the proposed annexation.
4. All of the landowners are already receiving water service from the Village.
5. Four (4) of the landowners are already receiving sewage service from the Village.
6. All of the territory already receives EMS and fire protection service from the Village pursuant to a contract between the Village and the Township.
7. All of the landowners who testified with reference to police protection testified that they are satisfied with the protection currently provided by the County Sheriff's Department and the Village Police Chief did not claim that his department could offer superior protection to that already provided, but merely claimed that they could offer the same protection currently being provided by the County Sheriff's Department.
8. The only measurable benefit to the landowners would be a reduction in water and sewer rates; however, the savings would be nominal for all landowners excepting one.
9. The only landowners who testified expressed opposition to the annexation citing increased real estate taxes, the potential for the imposition of an income tax by the municipality, and a preference for the township form of government as their reasons for opposing annexation.
Id.
 {¶ 15} The Village appeals from this judgment, presenting the following two assignments of error for our review.
 Assignment of Error I The court of common pleas of Paulding County (the "Trial Court") erredin upholding the decision of the Paulding County Board of Commissioners(the "Board") denying the Annexation Petition of 105.961 acres to theVillage of Antwerp (the "Village") because the Trial Court's decisionthat the "general good" of the territory would not be served isunconstitutional, illegal, arbitrary, capricious, unreasonable, orunsupported by the preponderance of the substantial, reliable, andprobative evidence on the whole record.
 Assignment of Error II The trial court erred as a matter of law because the concerns raised bythe opponents to the annexation cannot legally constitute "detriments"under Ohio Rev. Code § 709.033(A)(5), and therefore, the Village'sannexation should have been allowed to proceed because it showed that itcould provide services to the proposed annexation area and providemeasurable benefits in the form of lower water and sewer rates, andcapital improvements, such as road improvements.
 {¶ 16} Because both assignments of error are interrelated, we elect to address them jointly using the following standard of review.
 Standard of Review {¶ 17} The decision of a county board of commissioners regarding an annexation petition can be appealed to a common pleas court pursuant to R.C. 2506. R.C. 709.07(A). The duty of the common pleas court in such an appeal is to consider "the `whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determine whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of the substantial, reliable, and probative evidence." Henley v. City ofYoungstown Bd. Of Zoning Appeals, 90 Ohio St.3d 142, 147, 2000-Ohio-493.
 {¶ 18} The common pleas court's decision can then be reviewed by an appellate court, but the standard of review to be applied by the court of appeals is "more limited in scope." Id., quoting Kisil v. Sandusky
(1984), 12 Ohio St.3d 30, 34. The appellate court's review is limited only to questions of law and does not include the same extensive power to weigh and consider evidence as is granted to the common pleas court. Id. The trial court's judgment must be affirmed unless, as a matter of law, its decision is not supported by a preponderance of the substantial, reliable, and probative evidence. In re American Outdoor advertising,LLC, 3d Dist. No. 14-02-27, 2003-Ohio-1820, at ¶ 5, citing Kisil,12 Ohio St.3d at 34. This is tantamount to an abuse of discretion standard; therefore, an appellate court should reverse the trial court's judgment in such a case only upon a finding that the decision is unreasonable, arbitrary, or unconscionable. In re American OutdoorAdvertising at ¶ 5; see, also, Kisil, 12 Ohio St.3d at fn. 4.; In re:Petition to Annex 100.642 Acres of Violet Township into Village of CanalWinchester, 5th Dist. No. 03CA073, 2004-Ohio-7092, at ¶ 11; Marsillo v.Stow City Council, 9th Dist. No. 22229, 2005-Ohio-473, at ¶ 11; Andersonv. City of Vandalia, 2nd Dist. Nos. 20061, 20071, 2005-Ohio-118, at ¶22.
 Application of R.C. 709.033 {¶ 19} R.C. 709.033(A) provides that an annexation petition must be granted if the preponderance of the substantial, reliable, and probative evidence reflects that each of several factors have been met. The factor relevant to the appeal before us is R.C. 709.033(A)(5), which provides that:
On balance, the general good of the territory proposed to be annexedwill be served, and the benefits to the territory proposed to be annexedand the surrounding area will outweigh the detriments to the territoryproposed to be annexed and the surrounding area, if the annexationpetition is granted. As used in division (A)(5) of this section,"surrounding area" means the territory within the unincorporated area ofany township located one-half mile or less from any of the territoryproposed to be annexed.
 {¶ 20} Herein, the Board found that the benefits of the annexation to the area proposed to be annexed did not clearly outweigh the detriments of the annexation to the area proposed to be annexed. The Village's argument that such a finding was in error is two fold.
 {¶ 21} First, the Village claims that the Board applied the wrong standard for determining the general good of the territory to be annexed when it denied the annexation petition based on a finding that the benefits of the annexation did not outweigh the detriments of the annexation. The Village maintains that the Board was required by law to grant the annexation petition if a preponderance of the evidence proved that the annexation would not result in the loss of any material benefits that the land currently enjoys. Thus, the Village contends that the general good could be proven through evidence that the annexation would result in the status quo. In support of this, the Village cites to Brahmv. Beavercreek Twp. Bd. of Trustees (2001), 143 Ohio App.3d 205, 209. However, the Village fails to appreciate that the Brahm ruling was made under the previous version of R.C. 709.033, which made no specific mention of how the benefits and detriments of an annexation should be weighed in determining the general good. Rather, the previous version of the statute directed the Board to grant an annexation petition if it found that:
The territory included in the annexation petition is not unreasonablylarge; the map or plat is accurate; and the general good of the territorysought to be annexed will be served if the annexation petition isgranted.
Former version of R.C. 709.033(E) as amended by Senate Bill 38.
 {¶ 22} Based on the lack of any language instructing the board of commissioners as to how they must weigh the benefits and detriments of an annexation, and coupled with the public policy of Ohio favoring annexation, courts interpreting this former version of R.C. 709.033 ruled that the general good of the territory to be annexed could be proven without a showing that the annexation would result in a benefit to the territory to annexed. Brahm, 143 Ohio App.3d at 209; In re Annexationof 259.15 Acres, 6th Dist. No. L-04-1042, 2005-Ohio-1027, at ¶ 22;Washington Twp. Bd. of Trustees v. McLaughlin (Sept. 29, 1995), 2nd Dist. No. 14830. All that had to be proven was that the territory to be annexed would not lose any material benefits it enjoyed prior to the annexation. Id. In Brahm, the court stated that "[i]n considering the general good of the property to be annexed, the commissioners do not have to be presented with evidence that the annexation will produce a discernible benefit to the land to be annexed; rather, they must be shown merely that no material benefit which the land currently enjoys will be lost if the proposed annexation takes place." Brahm,143 Ohio App.3d at 209.
 {¶ 23} Nevertheless, R.C. 709.033 was amended in 2001 by Senate Bill 5. This new version of the statute requires the Board to make findings prior to granting an annexation petition that were not required under the older version of the statute. One of the findings the Board is now required to make is that "the benefits to the territory proposed to be annexed and the surrounding area will outweigh the detriments to the territory proposed to be annexed and the surrounding area." R.C.709.033(A)(5). The addition of this new language clearly requires a finding by the board of commissioners that the annexation will result in the land being annexed receiving at least some benefit. Merely proving that the land after annexation will enjoy a level of services comparable or adequate to that it enjoyed prior to the annexation is no longer the standard for proving that an annexation would be within the general good of the territory to be annexed.[1] Under the most recent version of R.C. 709.033, the annexation must result in the territory to be annexed receiving some sort of benefit and that benefit must outweigh any detriments. Accordingly, the Board utilized the correct standard for determining the general good of the territory proposed for annexation, and we find no merit in the Village's argument to the contrary.
 {¶ 24} In its second argument, the Village claims that the trial court erred by considering the increase in real estate taxes, the potential for the Village to impose an income tax, and a preference by the landowners opposed to annexation for the township form of government as detriments. The Village contends that such facts can not constitute detriments under R.C. 709.033(A)(5). This argument is based on a flawed interpretation of the trial court's judgment entry.
 {¶ 25} Contrary to the Village's assertion, the trial court did not rely on the increase in the real estate tax, the potential income tax, and the landowners preferred from of government as detriments. The trial court did mention these in the context of explaining why the landowners were opposed to annexation, but was not listing these as detriments. Rather, the detriment the trial court apparently relied upon was the fact that half of the landowners involved opposed the annexation. Therefore, the question before this court is whether this is a proper detriment for the trial court to consider under R.C. 709.033(A)(5).
 {¶ 26} While the change in R.C 709.033's language affected the manner in which the benefits and detriments are weighed, the new language does not define benefits and detriments. However, even under the prior version of the statute, courts engaged in weighing the benefits and detriments of an annexation when determining the general good. Jeter v. MontgomeryCounty Bd. Of Commissioners, 2nd Dist. No. 19746, 2003-Ohio-3832, at ¶ 10; In re: Appeal of Annexation of 65.48 Acres in Springfield Twp. to theVillage of Holland (June 20, 1997), 6th Dist. No. L-96-301. We find that the prior case law defining the parameters of what can be considered in determining the general good is illustrative of what can be considered as benefits and detriments under R.C. 709.033(A)(5).
 {¶ 27} The wishes of landowners have always been a proper subject to be considered in determining the general good of a territory to be annexed. Smith, 81 Ohio St.3d at 614. As stated by the Ohio Supreme Court, "[i]n enacting the statutes governing annexation, one of the intentions of the legislature was `to give an owner of property freedom of choice as to the governmental subdivision in which he desires his property to be located.'" Id., quoting Middletown v. McGee (1988),39 Ohio St.3d 284, 286. Accordingly, it was well within the trial court's discretion to consider the wishes of the landowners and to find that the fact half of the landowners in the territory subject to annexation are opposed to the annexation is a detriment. The village's second argument is also without merit.
 {¶ 28} Having reviewed the entire record before us, we find that the trial court did not abuse its discretion when it affirmed the Board's decision that the benefits of the annexation to the proposed territory (sewer and water savings) did not outweigh the detriments of the annexation to the proposed territory (the wishes of the landowners). Thus, both assignments of error are overruled
 {¶ 29} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Shaw, J., concurs.
 Cupp, P.J., concurs separately.
[1] We also acknowledge that there is a substantial body of case law standing for the proposition that if one hundred percent of the landowners are in favor of annexation, then the board of commissioners must not engage in comparing the level of services the territory would receive if annexed to the level of services the territory is currently receiving. Smith v. Granville Twp. Bd. Of Trustees, 81 Ohio St.3d 608, 615,1998-Ohio-340. When one hundred percent of the landowners are in agreement, a finding that the annexed territory would receive adequate services is sufficient to establish the general good. Id. However, the landowners in the case sub judice are divided on the issue of annexation, and Smith was decided under the prior version of R.C. 709.033. Furthermore, the 2001 revisions to R.C. 709 provide for a previously unavailable expedited process for the situation where one hundred percent of the landowners to be annexed are in favor of the annexation. Therefore, we find that the holding in Smith is inapplicable to the situation before us.