DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Williams County Court of Common Pleas that affirmed the decision of the village of Edon City Council to remove appellant from his office as village marshal. For the following reasons, this court affirms the judgment of the trial court.
 {¶ 2} Appellant sets forth three assignments of error:
 {¶ 3} "1. The lower Court erred in affirming the decision of the Village of Edon removing Appellant from his employment by violating R.C. Sec. 121.22(G) in voting and/or meeting on the decision to terminate the Appellant before the Mayor had imposed a suspension and filed charges with the Village Council as prescribed by R.C. Sec. 737.171.
 {¶ 4} "2. The lower Court erred in affirming the decision of the Village of Edon removing Appellant from his employment insofar as the evidence did not establish just cause for his removal.
 {¶ 5} "3. The lower Court erred in affirming the decision of the Village of Edon as the Village failed to comply with R.C. Sec. 2506.02
which requires the filing of a complete transcript of proceedings with the common pleas court within forty (40) days of the filing of the notice of appeal from the Village's termination of the Appellant."
 {¶ 6} The facts relevant to the issues raised on appeal are as follows. Appellant was hired as the marshal of the village of Edon, Ohio, in 1986. At a regular village council meeting held in early May 2004 (the record is vague as to the exact date), the mayor and council moved to executive session to discuss the mayor's concerns over appellant's job performance. On May 17, 2004, appellant was served with a copy of a "Disciplinary Complaint" addressed to the village council and signed by the mayor. In the complaint, the mayor stated he had reason to believe appellant was guilty of "neglect of duty, insubordination, inefficiency and other acts of misfeasance, malfeasance or nonfeasance in the performance of his official duties as Chief of the Village of Edon Police Department." The mayor further stated he had made every effort to improve appellant's job performance "with limited results" and stated he was recommending to the council that appellant's employment be terminated. Specifically, the complaint alleged: 1) the mayor had received a complaint from a local insurance company citing appellant's failure to file traffic accident reports in a timely manner for the past several years, despite the fact that the current mayor and his predecessors had discussed the issue with appellant; 2) appellant had failed to review applications on file and provide the mayor with the names of persons he wished to interview for a position as a part-time police officer, despite having been instructed to do so several months earlier; 3) appellant had not submitted daily log sheets and weekly reports of department activities in a timely or complete manner, despite having been instructed to do so several months earlier and 4) appellant failed to respond in a timely manner to two emergency calls in March and April 2004 despite repeated attempts to contact him by way of his home phone, cell phone and pager.
 {¶ 7} An initial public hearing on the complaint was held June 9, 2004. The meeting was adjourned after four hours of testimony and reconvened on June 24, 2004. After six more hours of testimony, the meeting was adjourned and the council moved into executive session to discuss the charges. Approximately 90 minutes later, the council came out of executive session. The charges were read aloud and council members voted unanimously to find each of the four charges were supported by the evidence presented. One council member moved that appellant be terminated as village marshal of Edon and the remaining members voted in favor of the motion. Accordingly, appellant was removed from his position on June 25, 2004.
 {¶ 8} In affirming the decision of the village council, the trial court found appellee had complied with the mandates of R.C. 737.171 and121.22(G) and that neither the executive session held in May prior to the issuance of the official charges nor the session held in June after the public hearings deprived appellant of a protected right. The court also found that the village's decision to remove appellant from employment was supported by substantial, probative and reliable evidence as to all four charges.
 {¶ 9} As set forth in R.C. 2506.01, appeal of a final decision of an administrative body is made to the common pleas court. Appeal of the common pleas court judgment is made to the court of appeals. R.C. 2506.04. When reviewing an administrative appeal brought pursuant to R.C. 2506.01, "the common pleas court considers the `whole record,' * * * and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Henleyv. City of Youngstown Bd. of Zoning Appeals, 90 Ohio St.3d 142, 147,2000-Ohio-493.
 {¶ 10} Our standard of review is more limited in scope and requires that the common pleas court's decision be affirmed unless we find, as a matter of law, that the decision is not supported by a preponderance of reliable, probative and substantial evidence. Smith v. Granville Twp.Bd. of Trustees, 81 Ohio St.3d 608, 613, 1998-Ohio3-40. (Citations omitted.) "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Lorain City School Dist. Bd. of Edn. v. State Emp. RelationsBd. (1988), 40 Ohio St. 3d 257, 261. An abuse of discretion connotes more than an error of law or judgment; it implies that the action of the trial court was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} On appeal, appellant challenges the procedure followed by the mayor and the village council prior to issuing the charges against him as well as the sufficiency of the evidence presented in support of his removal. In his first assignment of error, appellant asserts R.C. 121.22(G) prohibits the holding of an executive session to consider dismissing a public employee or official. He further argues his dismissal is invalid because he was not served with the charges until after the first executive session in May 2004, and because the public hearings were held after the executive session.
 {¶ 12} Pursuant to R.C. 121.22(G), "* * * the members of a public body may hold an executive session * * * at a regular or special meeting for the sole purpose of the consideration of any of the following matters: * * * the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee * * *." (Emphasis added.)
 {¶ 13} Appellant cites the decision in Conner v. Lakemore (1988),48 Ohio App.3d 52, in support of his assertion that R.C. 121.22(G) prohibits holding an executive session to consider the dismissal of a public employee or official. First, this is a misstatement of the statute. As set forth above, R.C. 121.22(G)(1) clearly states that an executive session may be held for the consideration of the dismissal or discipline of a public employee or official. Also, appellant's reliance on Conner, supra, is misplaced. In Conner, the village police chief was dismissed by the mayor and then appealed his dismissal to the village council pursuant to R.C. 737.171. A public hearing was held on the appeal, upon Conner's request. After the hearing, the council held an executive session to consider the evidence. Council then went back into the public hearing where the members voted to uphold the mayor's action. Conner complained that the village council violated R.C. 121.22(G) by, over his objection, holding an executive session after the evidentiary hearing. The Conner court held that once the village police chiefappealed his dismissal to the village council and requested a publichearing, R.C. 121.22(G) prohibited council from holding an executive session to consider the dismissal. The facts of Conner clearly differ from those of the case before us, where the executive session of which appellant complains was held prior to the public hearings.
 {¶ 14} We further note that R.C. 121.22(H) states in relevant part: "A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body. * * *" The formal action terminating appellant's employment was adopted in an open meeting when the vote was taken after council returned from executive session. R.C.121.22(H) continues: "* * * A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for a purposespecifically authorized in division (G) or (J)[1] of this section andconducted at an executive session held in compliance with this section. * * *" (Emphasis added.) In this case, the formal action adopted resulted from deliberations that were for a purpose specifically authorized in division (G) of R.C. 121.22, as discussed above in ¶ 12.
 {¶ 15} Appellant argues that council's actions were a "blatant violation" of his rights because the mayor did not serve him with charges and hold the public hearings until after the first executive session. Appellant provides no authority to support his claims. Meeting in executive session to consider possible discipline or dismissal prior to serving the employee with the charges is not prohibited by R.C. 121.22, nor is holding a public hearing after an initial executive session. It is clear from the record that the first executive session was held toconsider possible discipline or dismissal in light of the mayor's concerns regarding appellant's job performance. The record reflects that after appellant was served with the complaint he requested a public hearing. Accordingly, public hearings were held on June 9 and 24, 2004. When questioned as to what transpired during the May executive session, the mayor testified that he and the council members discussed the allegations concerning appellant's job performance. All six council members also testified at the hearing. As to the May executive session, all council members stated that what took place was a discussion. All agreed that the mayor discussed the issues and expressed his recommendation that appellant's employment be terminated. Further, all council members were in agreement that no vote was taken during that session. Councilwoman Mary Trausch stated, "we never vote in executive session, only discuss." Councilman Chuck Bidwell testified that "What I understood we were doing was discussing the situation at hand." Several council members testified that they did not express any opinion during the meeting.
 {¶ 16} The testimony of the mayor and council members at the public hearing confirms that the May executive session was nothing more than a discussion of the situation. The record indicates that at no time did the mayor or council take any action to terminate appellant's employment during or immediately following that session. Nothing in R.C. 121.22(G) prevents a village council from discussing a village employee's job performance. To the contrary, the statute clearly authorized the council to consider appellant's "dismissal [or] discipline." Appellant suggests that the council "voted and/or met on the decision to terminate Appellant" (emphasis added) before the mayor imposed a suspension and filed formal charges with the council. However, no decision to terminate appellant was made before the charges were filed and appellant was suspended.
 {¶ 17} After the close of evidence at the June 24, 2004 hearing, the village council met in an executive session to consider the charges. Council's actions at each stage of this matter clearly were in compliance with the relevant statutory law and we therefore find that the trial court did not err by affirming the decision of the Edon village council. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 18} In his second assignment of error, appellant asserts the trial court erred in affirming the village council's action because the evidence did not support the decision to remove him from his employment. As set forth above, this court must affirm the decision of the common pleas court unless we find, as a matter of law, that the decision is not supported by a preponderance of reliable, probative and substantial evidence.
 {¶ 19} Appellant first challenges the sufficiency of the evidence offered to support the charge that he failed to file traffic accident reports in a timely manner. Appellant asserted at the public hearing that he was not responsible for filing the reports and that the job had always been assigned to the full-time officers who worked with him. At the hearing, the mayor submitted a letter from an insurance agency which stated that the agency had experienced problems receiving police reports in a timely manner for several years with little or no improvement. The letter indicated that the agency had discussed the problem with Edon's previous mayor and with appellant. Mayor Fenstermaker testified that the Ohio Department of Safety had not received any accident reports from the village of Edon in 2001 or 2003, and only a half dozen in 2002. The mayor also testified that after appellant was suspended he learned that a local resident was still waiting for a copy of an accident report he had instructed appellant to mail to her three months earlier. The mayor further testified that after appellant was suspended he found ten accident reports in appellant's office, some from accidents that occurred in 2000. The mayor contacted the Department of Safety and determined the reports had never been filed with the agency. Appellant admitted at the hearing that he had never filed an accident report. He stated that the responsibility for filing the reports was assigned to the department's full-time officer, but that since the last officer left the department in June 2003 the reports had "sat in piles." Appellant also admitted that, regardless of who was assigned to file the reports, it was ultimately his responsibility as chief of police to insure that it was done.
 {¶ 20} The second charge involved appellant's alleged failure to forward to the mayor the applications of anyone appellant thought should be interviewed for an opening as a part-time police officer. Appellant asserts the mayor had already been given the applications during an earlier hiring process in the fall of 2003. At the public hearing, the mayor testified that in October 2003, and January 2004, he and appellant discussed hiring another part-time officer. He testified he told appellant to go over the applications on hand and select a few for interviews. In April 2004, appellant told the mayor he could not find the applications. The mayor testified that he was troubled because appellant failed for months to respond to his request, during which time the village was in need of more part-time officers to relieve appellant's workload. Appellant acknowledged that he never went through the applications or made recommendations to the mayor as requested.
 {¶ 21} The third charge alleged appellant failed to submit daily and weekly log sheets to the mayor as he had requested. On appeal, appellant asserts the mayor did not have the authority to request the reports and argues that the mayor has no authority over the uniformed members of the police department. This court considered a similar argument in Sturm v.Village of Bradner (May 7, 1982), 6th Dist. No. WD-81-74. In that case, this court found that the marshal of a village is a subordinate of the mayor, citing R.C. 737.18, which states that the "marshal shall be the peace officer of a village and the executive head, under the mayor, of the police force." (Emphasis added.)
 {¶ 22} At the public hearing, the mayor testified that in January 2004, he asked appellant to keep a daily log of the hours he and the other officers worked and the duties they performed. He testified appellant complied for the first several weeks, then went on vacation and fell behind. Some log sheets were turned in a few weeks late and eventually appellant stopped submitting them completely. The mayor further testified he asked appellant for the sheets on three occasions and finally received some of them. Appellant essentially agreed with the mayor's testimony on this issue and admitted at the hearing that he received the request and did not comply. Appellant further testified that keeping the logs and compiling the reports would take away from his other duties as police chief and stated that most of the information, other than details of traffic stops, was provided at council meetings and available through "communications logs."
 {¶ 23} The fourth charge arose from appellant's failure to respond in a timely manner when he was summoned in response to emergency calls in March and April 2004. The March incident occurred at approximately 3:30 a.m. when central dispatch called appellant's home phone regarding a domestic situation. Appellant testified his wife answered the call but set the phone down and went back to sleep without waking him. According to the radio log, the operator attempted to reach appellant six times by telephone, cell phone and pager between 3:30 and 4:03 a.m. Messages were left on his cell phone and pager. Finally, a Williams County sheriff's deputy went to appellant's home and woke him at approximately 4:37 a.m.; appellant then responded to the scene. The April incident, another domestic violence situation, began at approximately 4:56 a.m. when dispatch called appellant on his cell phone. He did not answer and four more calls were made to his home phone and cell phone. When appellant still did not respond, a sheriff's deputy went to his home and woke him at 5:47 a.m. When the mayor spoke to appellant about it later, appellant apologized and said he just did not hear either of the phones. When questioned at the public hearing about the incidents, appellant minimized the situations and discussed the back-up procedures in place in the event dispatch cannot reach the officer on call. Further, when questioned as to whether he believes the fact that there are back-up contact procedures in place excuses a failure to respond by the person initially contacted, appellant responded, "I would hope so." When asked whether he thought there could be situations where an immediate response to an incident would be required in order to avoid serious consequences, appellant stated, "Could, would, should. I mean, it's all possibilities but did it? No." The mayor provided council with copies of the communications logs from each incident.
 {¶ 24} This court has thoroughly reviewed the record before the trial court, including the full transcript of the public hearings. We conclude, as a matter of law, that the council's decision to remove appellant from his position as village marshal was supported by a preponderance of reliable, probative and substantial evidence and that the trial court did not abuse its discretion by affirming the decision. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 25} In his third assignment of error, appellant asserts the lower court erred by affirming the council's decision when the village failed to file a complete transcript of proceedings with the court of common pleas within the time limit set forth by statute. Pursuant to R.C. 2506.02, the village council was required to file in the common pleas court a complete transcript of all the original papers, testimony and evidence offered, heard, and taken into consideration within 40 days of the date the notice of appeal was filed. In this case, the notice of appeal was filed June 25, 2004; the transcript of the public hearings was filed September 1, 2004. Appellant argues the delay in filing the transcript required the reviewing court to render judgment in his favor. This argument fails for several reasons.
 {¶ 26} First, R.C. 2506.02 contains no language requiring the reviewing court to find in favor of appellant if there is a delay in filing the transcript. In support of his argument, appellant makes the broad statement that if an administrative body fails to comply with the statutory mandate, the court must enter a finding in favor of the party adversely affected. Appellant follows this claim with a cite to NaturalHealth Foundation v. Bd. of Zoning Appeals, City of Willoughby, 11th Dist. No. 2002-L-118, 2003-Ohio-5706 without discussing the facts, rationale or holding in that case. First, we note Willoughby did not hold that if an administrative body fails to comply with R.C. 2506.02 the trial court must find in favor of the appellant. Second, unlike the case before us, in Willoughby a transcript was never filed with the court of common pleas. The Willoughby court simply found that where an incomplete record has been filed, the lower court must hold an evidentiary hearing. In Neague v. Worthington City School Dist. (1997), 122 Ohio App.3d 433, appellants failed to file a praecipe in the trial court within the time limit set forth in R.C. 2506.02. In finding that the trial court did not abuse its discretion by denying a motion to dismiss filed by the appellee, Neague noted the "fundamental tenet of judicial review" that courts should decide cases on the merits. Neague at 440. Similarly, there would be no rational reason for the trial court in this case to have found in favor of appellant without reviewing the record simply because the village did not file the transcript in a timely manner. Finally, appellant does not assert how he may have been prejudiced by the delay in the filing of the transcript. The transcript was filed in the court of common pleas three weeks before appellant filed his brief in support of the appeal. Also, appellant did not raise this issue in his initial brief or in his reply brief submitted to the trial court. Upon review, we are unable to find that the delay prejudiced appellant in any way. Based on the foregoing, appellant's third assignment of error is not well-taken.
 {¶ 27} On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Williams County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Skow, J., Parish, J. Concur.
[1] Subsection (J) of this section refers to executive sessions held by a veterans service commission.