[Cite as *Huth Ready Mix & Supply Co. v. Massillon*, 2024-Ohio-5725.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| HUTH READY MIX AND SUPPLY COMPANY | JUDGES: Hon. W. Scott Gwin, P.J. Hon. John W. Wise, J. |
| Plaintiff-Appellant | Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. 2024 CA 00068 |
| CITY OF MASSILLON | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                             Pleas, Case No. 2023 CV 00655


JUDGMENT:                    Affirmed in part; reversed in part


DATE OF JUDGMENT ENTRY:      December 6, 2024


APPEARANCES:

For Plaintiff-Appellant          For Defendant-Appellee

ADAM M. RUNKLE                   JUSTIN W. RICHARD
STARKEY & RUNKLE, LLC            LAW DIRECTOR
638 West Maple Street            EDMOND J. MACK
Hartville, Ohio  44632           ASSISTANT LAW DIRECTOR
                                 Two James Duncan Plaza, 2nd Floor
                                 Massillon, Ohio  44646

*Wise, J.*

{¶1}    Appellant City of Massillon appeals the May 7, 2024, decision of the Stark County Court of Common Pleas reversing the decision of the Massillon City Council and the Massillon Board of Zoning Appeals, which affirmed and upheld the cease-and-desist order issued to Appellee Huth Ready Mix and Supply Company by the City of Massillon's Building Department Code Enforcement Division.

## STATEMENT OF THE FACTS

{¶2}    The facts and procedural history relevant to this appeal are as follows:

{¶3}    Huth Ready Mix and Supply Company ("Huth") is a ready-mix concrete plant in the City of Massillon ("Massillon") which has been in operation since 1959 and pre-dated the City of Massillon adoption of a zoning code.

{¶4}    On November 16, 2022, the zoning official for the City of Massillon issued a cease-and-desist order to Huth, stating that the official had learned that second-hand or waste concrete materials were being crushed and/or processed on Huth's property using a crushing machine. The order stated further that the breaking-up of concrete by jackhammering or crushing was not a permitted use under the property's I-1 light industrial zoning designation, nor was it a permitted prior non-conforming use, and ordered Huth to immediately cease and desist said activities.

{¶5}    On November 23, 2022, Huth filed a timely appeal of the zoning official's cease-and-desist order with the City of Massillon's Board of Zoning Appeals ("BZA").

{¶6}    On January 12, 2023, the BZA heard Huth's appeal and voted unanimously to deny the appeal and uphold the cease-and-desist order.

**{¶7}** The BZA's decision was memorialized with conclusions of fact during a special meeting on February 23, 2023, with the passage of BZA Resolution 2023-2, which was sent to Huth the following day.

**{¶8}** Huth filed a timely appeal of the BZA's decision to Massillon City Council.

**{¶9}** On March 20, 2023, Massillon City Council heard the appeal and voted to uphold the decision of the BZA. Massillon City Council memorialized its decision and supporting conclusions of fact with the passage of Resolution 4-2023, which was sent to Huth on March 22, 2023.

**{¶10}** On April 11, 2023, Huth filed a Notice of Appeal pursuant to R.C. 2506, appealing "Resolution Nov. [sic] 4-2023 adopted by the Massillon City Council on March 20, 2023, approving and affirming the decision of the Massillon Board of Zoning Appeals in Case No. 2023-2 and denying the appeal".

**{¶11}** On June 15, 2023, City of Massillon filed a motion to dismiss the administrative appeal for lack of jurisdiction, arguing that Huth failed to serve the clerk of Massillon City Council with the notice of appeal, and thus failed to properly perfect service, thereby depriving the trial court of jurisdiction.

**{¶12}** On July 12, 2023, the trial court issued a Judgment Entry Granting Defendant City of Massillon's Motion to Dismiss for lack of jurisdiction. The trial court stated in its judgment entry that Huth failed to properly serve the City of Massillon, citing R.C. §2505.07 and the Ohio Supreme Court case of *Dudukovich v. Lorain Metropolitan Housing Authority* (1979), 58 Ohio St.2d 202, 203, in support of its decision.

**{¶13}** Huth appealed, and by opinion and judgment entry dated February 6, 2024, this Court reversed. *Huth Ready Mix & Supply Co. v. Massillon*, 2024-Ohio-427 (5th Dist.).

{¶14} On remand, Huth's appeal proceeded as confined to the transcript without additional evidence pursuant to R.C. §2506.03(A).

{¶15} On February 9, 2024, Huth filed its merit brief with the trial court assigning three assignments of error. Massillon filed its response brief on March 14, 2024. Huth replied on April 10, 2024.

{¶16} On April 17, 2024, Massillon learned that Huth had once again located a concrete crushing machine on its property and commenced operations.

{¶17} On April 22, 2024, Massillon filed motions for temporary restraining order, preliminary injunction, and permanent injunction with the trial court. Massillon further requested immediate, expedited consideration.

{¶18} On April 23, 2023, the trial court overruled Massillon's motion for temporary restraining order and scheduled a hearing on Massillon's motion for preliminary injunction for May 3, 2024.

{¶19} On May, 1, 2024, Huth moved to continue the hearing citing a conflict with a previously scheduled deposition in another matter. The trial court granted Huth's requested continuance the following day and rescheduled the hearing on Massillon's requested preliminary injunction to May 13, 2024.

{¶20} On May 7, 2024, the trial court rendered a final decision on the merits of Huth's pending administrative appeal, accepting all three of Huth's assignments of error, finding that "the decision of Massillon in upholding the cease and desist order in this case was unconstitutional, illegal, arbitrary, capricious, unreasonable, and unsupported by the preponderance of substantial, reliable and probative evidence on the whole record," and reversing the "decision of Massillon in Resolution 4-2023" in its entirety. In a footnote, the

trial court further stated that, "[b]ased upon the Court's ruling with regard to the Administrative Appeal, the Court finds Massillon's motion [for a restraining order, preliminary injunction, and permanent injunction] - is moot."

**{¶21}** It is from this decision Appellant City of Massillon now appeals, raising the following errors for review:

### ASSIGNMENTS OF ERROR

**{¶22}** "I. THE TRIAL COURT COMMITTED ERROR BY REVERSING THE DECISIONS OF CITY COUNCIL, THE BOARD OF ZONING APPEALS, AND THE ZONING OFFICER AND SUBSTITUTING THE TRIAL COURT'S OWN JUDGMENT FOR THAT OF THE RESPONSIBLE MUNICIPAL OFFICIALS.

**{¶23}** "II. THE TRIAL COURT COMMITTED ERROR BY DENYING MASSILLON'S MOTION FOR TEMPORARY RESTRAINING ORDER WITHOUT ANY LEGAL ANALYSIS, NOR REASONING, FOR DENYING THE MOTION.

**{¶24}** "III. THE TRIAL COURT COMMITTED ERROR BY DENYING MASSILLON'S MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION AS MOOT."

### *R.C. §2506 Appeals*

**{¶25}** R.C. §2506.04 sets forth the applicable standard of review for a court of common pleas in an administrative appeal:

> [T]he court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse,

vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code.

**{¶26}** The Ohio Supreme Court further explained:

[W]e have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. *See Smith v. Granville Twp. Bd. of Trustees* (1998), 81 Ohio St.3d 608, 612, 693 N.E.2d 219, * * * citing *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 206–207, 12 O.O.3d 198, 389 N.E.2d 1113 * * *.

**{¶27}** *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000).

**{¶28}** As an appellate court, however, our standard of review to be applied in an R.C. §2506.04 appeal is "more limited in scope." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984). "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include

the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." *Id.* at fn.4. *See, also, Health Management, Inc. v. Union Twp. Bd. of Zoning Appeals*, 118 Ohio App.3d 281, 285 (1997). "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988).

**{¶29}** Ultimately, the standard of review for appellate courts in a Section 2506 zoning appeal is whether the common pleas court abused its discretion in making its determinations pursuant to R.C. 2506.04. *See Weber v. Troy Twp. Bd. of Zoning Appeals*, 2008-Ohio-1163, ¶ 13 (5th Dist.); *Powers v. City of Rocky River Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 70439, (Nov. 7, 1996). Thus, the standard of review for appellate courts in this context is "designed to strongly favor affirmance." *Frazeysburg v. Stokes*, 2018-Ohio-4153, ¶ 17 (5th Dist.), *citing Cleveland Clinic Foundation v. Cleveland Board of Zoning Appeals,* 2014-Ohio-4809.

**{¶30}** These standards permit reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law. *Cleveland Clinic Foundation, supra*, at ¶ 30.

**I.**

**{¶31}** In its first assignment of error, Appellant City of Massillon argues the trial court erred in granting Huth's administrative appeal. We disagree.

**{¶32}** R.C. §2506.04 grants a limited power to this Court to review the judgment of the trial court. Keeping within the limited scope of review, we look to the record to

review the judgment of the common pleas court only on questions of law. Reviewing the record for an abuse of discretion, and without weighing the evidence, this Court is required to limit the scope of inquiry to only whether the trial court abused its discretion when it ruled in favor of Huth and against the Massillon BZA and the City of Massillon. Upon review, we find the trial court did not abuse its discretion.

**{¶33}** Huth's property and its operations pre-existed Massillon's zoning code. James Johnson, the Code Enforcement Officer for Massillon, testified that despite the effects on neighboring properties, upon implementation of Massillon's zoning, Massillon zoned Huth's property as I-1 Light Industrial. Mr. Johnson further testified that concrete plants coming into Massillon today would have to be placed in an area zoned I-2. (*Id.* at p. 16). In describing the difference between an I-1 and I-2 district, Mr. Johnson testified,

> *** [Normally, cement concrete plants would be in an I-2 area. Huth is existing non-conforming. This crushing of the concrete is a new operation that they wish to implement, whether it be on a periodic basis or permanently. It cannot meet the I-1 zoning, it just cannot do it. Abutting those residential areas, it can't it can't do it, they can't even meet the existing I-1 because there is no wall, there is no fence. A fence would not stop what they are doing, it would not stop the noise. I do not know if a wall would or would not but those requirements are not even in place going back to that.
>
> I want to read you the intent of an I-2, the I-2 district is so structured to permit the manufacturing, processing and compounding of semi finished or finished products from raw materials as well as from previously prepared material. Again I remind you that Huth is existing non-conforming this is a

new operation and I refer to the last page here, 11 of 12, or the last two pages what is a non-conforming use in an existing area. You surely can read the intent for yourself and the intent is there, the intent of the Zoning Ordinance to permit legal non-conforming lots or structures or uses to continue until they are removed, but not to encourage their survival. So the idea of adding a new operation and brining in all this equipment with with [sic] that is creating the concerns of the residents and violating the zoning laws and the other ordinances, the intent of the I-1 existing non-conforming is not to do that. Its [sic] just to keep it as safe as possible so, um, you can read on in section C, such uses declared by the Zoning Committee to be incompatible with permitted uses in the districts involved. It is further intent of the Zoning Ordinance that nonconformities shall not be enlarged upon, expanded or extended nor be used as grounds for adding or other structures for adding structures of uses prohibited elsewhere in the same district. So in other words going back to where Huth expanded over the years here with change of ownership and that and adding this new operation, that is not permitted under existing non-conforming rules.

**{¶34}** (T. at 15)

**{¶35}** Mr. Johnson also testified that the crushing of concrete was not specifically addressed or prohibited by the zoning code.

**{¶36}** Huth presented testimony from Adam Brosnahan, the owner of Huth Ready Mix as well as a construction company, and Matt Bachtel, owner of Bachtel Excavation.

Each of these witnesses testified that they deal in concrete and aggregate on a daily basis.

**{¶37}** During his testimony, Mr. Brosnahan explained that his decision to crush the excess concrete, instead of continuing to build mountains of excess concrete on the property was a cost analysis decision:

Concrete has never been crushed on our property before and that's because the previous owner didn't choose to, um, I however, chose to because I plan on being in business for a long time and you cannot just continue to build mountains. You just can't do it. It's unusable, so we made a usable product that we sold back, it creates taxes, I mean you know whats [sic] going on over here. I mean, you have to do something with it. Every ready mix plant at least in Ohio this goes on they're directly involved with the processing of concrete whether it's first hand in my case, second hand in other cases. It's being crushed You can drive into Canton and you can see it at multiple facilities. So it happens. I understand it didn't happen here before Adam but it it's [sic] necessary and that's what we're doing.

\*\*\*

Well it's extremely costly for our trucks to say leave the plant loaded with a live material so it's gonna go to a job site, after that job site, it's gonna have leftovers that's still in the truck. So logistically coming right back to the plant and getting ridding [sic] of it, unloading it and going to another job we're not loosing [sic] time. If I sent that truck to another facility to dump then you're losing time which is gonna drive my cost up and we're in a very

competitive market in Stark County. So yeah it would be detrimental to what we do.

**{¶38}** (T. at 24)

**{¶39}** He further explained his decision to process the pre-existing concrete, stating:

Well here's where we're at, so two years ago, I made the call to decide to process what we had. Ok, and that's when we had like a literal mountain where concrete was dumped on top of itself over time. So big equipment came in to process it. Beaver came in, we had two 80,000 pound excavators with hydraulic hammers to put the material in to a size that can go through a processing plant. That's where all this started. When then when we're done we cleaned it up. We processed about 61,000 tons plus or minus of material that was sold. Then we were done and all the equipment moves off site. And then we spend the next year and half or so getting you know we had leftovers coming back. So we just processed it again. Um I think they [sic] was about six weeks till they were all done. And we processed about 13,500 tons of material. So it's not something that needs to go on every day. Ah the first time it was big, there was a lot to do there. And now I mean they were there, I'd have to go look exactly how long they were there but if they were there for three to five weeks. I'd also like to say that in those pictures you see of the crushing equipment and there's dust around it, that that's all in the initial set-up. Everyone shows up at the very beginning cause [sic] they call immediately. Equipment comes in on

low boys and they are immediately down there complaining. Because its different and I get it, but you gotta give it a change [sic]. The Health Department shows up, they say Adam everything's ok, this is fine, you're fine; they're setting up. You're gonna create a little dust, you're gonna make a little noise and you're gonna get set up and that's fine. Then your work pretty well dustless. EPA comes down, I mean we have all, you see it, its [sic] all permitted. With the EPA, the Health Department, its above board. We operate every day and try to above board. We water our roads, we water the streets, we do whatever we can to make it as friendly to our neighbors as possible. Not everybody can be pleased. And I apologize for that.

**{¶40}** (T. at 24)

**{¶41}** Mr. Brosnahan testified that he has not changed the footprint of the property. (T. at 23). He further testified that the crushing of concrete is customary at every ready mix plant in Ohio. (T. at 119).

**{¶42}** Matt Bachtel testified that he had been in the construction industry for thirty years and that other local concrete facilities, including Diano Concrete and Reliable Redi-Mix, crush leftover concrete on-site at their facilities. (T. at 119).

**{¶43}** Based on the record before it, the trial court found that the crushing of concrete was "an activity that is incidental to, or customarily found in connection with the operation of Huth's business, regardless of when the activity began to occur, and any determination otherwise is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of substantial, reliable, and probative evidence and must be reversed." (May 7, 2024 Judgment Entry at 10).

**{¶44}** Upon review, we find that the evidence before the trial court supported its decision and find no abuse of discretion by the trial court.

*Cease and Desist Order*

**{¶45}** The original cease and desist order of November 16, 2022, stated " [o]ur office has learned that second-hand or waste concrete materials are currently being crushed and/or processed …" and ordered Huth to "immediately cease and desist all activities and operations involving the jack hammering, crushing of used concrete materials related to the recycling of second-hand concrete materials …" (T. at 117).

**{¶46}** Mr. Johnson testified that he assumed that the concrete being crushed by Huth was waste concrete, meaning construction debris material. (T. at 118). He admitted, however, that he did not know where the concrete came from. *Id.*

**{¶47}** Mr. Brosnahan testified that Huth Ready Mix does not accept used or second-hand concrete from third parties. (T. at 118).

**{¶48}** Based on the record, we find the Cease and Desist Order was based on erroneous information as Huth was not processing "second-hand or waste concrete material."

*Zoning Change from I-1 to I-2*

**{¶49}** In its decision, the trial court found, based upon the Chief Zoning Inspector's own testimony, that because Huth's operations have historically had external effects on the neighboring properties, it should be zoned as I-2 Heavy Industrial, and therefore when Massillon adopted a zoning ordinance, it incorrectly classified Huth's property as I-1 Light Industrial.

{¶50} Upon review, while cognizant of the testimony of the Chief Zoning Officer for the City of Massillon wherein he stated that Huth should have been zoned I-2 when it was grandfathered in under Massillon's zoning code (T. at 17), we find that the Common Pleas Court is without authority to change the zoning classification for Huth. Such remains the function of the legislature. "[Z]oning, per se, is exclusively a legislative matter, and the changing of a parcel of real property from one use classification to another use classification can only be done by the legislative body." *Mobil Oil Corp. v. City of Rocky River*, 38 Ohio St.2d 23, 31 (1974). "The zoning of property is a function of local administrative and legislative authority and is not a function of the judicial branch of government." *G.S.T. v. Avon Lake* (1978), 59 Ohio App.2d 84. "It is not the function of the trial court to establish the zoning classification regarding any particular property or district. This function is, and historically has been, the sole preserve of the municipal entity within whose territorial jurisdiction the property lies. *Id.* at 86.

{¶51} *See also Humble Oil v. City of Akron*, unreported, Ninth Dist. No. 5607, decided July 28, 1965; *Willott v. Beachwood* (1964), 175 Ohio St. 557, and *Curtiss v. Cleveland* (1959), 170 Ohio St. 127.

{¶52} We therefore reverse that portion of the trial court's decision finding that the City of Massillon incorrectly classified Huth's property as I-1 Light Industrial and changing the zoning classification to I-2 Heavy Industrial.

{¶53} The remainder of Appellant's first assignment of error is overruled.

**II., III.**

**{¶54}** In its second and third assignments of error, Appellant argues the trial court erred in denying its motions for a temporary restraining order and motion for a preliminary or permanent injunction. We disagree.

**{¶55}** The trial court herein found that the City of Massillon's motions for a Temporary Restraining Order, Preliminary Injunction and/or Permanent Injunction were moot based on its decision reversing the decision of the BZA and the City of Massillon.

**{¶56}** This Court likewise finds said Motions to be moot based on our decision upholding the decision of the Common Pleas Court.

**{¶57}** Appellant's second and third assignments of error are overruled.

**{¶58}** For the reasons stated in the foregoing opinion, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed in part.

By: Wise, J.

Gwin, P.J., and

King, J., concur.

JWW/kw 1202